**PROVIDENT MUTUAL LIFE INSURANCE CO. OF PHILA.**

v.

**Selma EHRLICH and Shirley Ehrlich a/k/a Shirley Joan Ehrlich**

**and**

**Shirley Ehrlich a/k/a Shirley Joan Ehrlich, Executrix of the Estate of Edward W. Ehrlich, Dec'd.**

Civ. A. No. 73–199.

United States District Court,
E. D. Pennsylvania.

Dec. 18, 1973.

J. Stokes Adams, III, Philadelphia, Pa., for plaintiff.

Jay D. Barsky, Philadelphia, Pa., for Selma Ehrlich.

M. Stuart Goldin, Philadelphia, Pa., for Shirley Ehrlich.

## MEMORANDUM OPINION

WEINER, District Judge.

Presented to this Court is an interpleader action filed by a life insurance company wherein the wife of the decedent insured, whom he divorced, and his wife, whom he subsequently married, each claim to be the beneficiary of the life insurance policy in question. The individual claimants in addition to asserting that they should be considered as the successful litigant in the interpleader action have also filed counterclaims wherein, in substance, each of them asserts that in the event that they are unsuccessful in the interpleader action the insurer, because of its improper behavior, remains liable to her. We turn now to the circumstances and facts which gave rise to these actions.

On June 17, 1951 defendant Selma Ehrlich (Selma) married Dr. Edward W. Ehrlich. On December 9, 1962 the plaintiff, Provident Mutual Life Insurance Company of Philadelphia (Provident) issued a $25,000.00 life insurance policy to Dr. Ehrlich with Selma designated as the primary beneficiary. On October 5, 1966 Dr. Ehrlich and his wife separated. Dr. Ehrlich was next heard of in Nevada.

Shortly after the separation, Selma instituted proceedings against her husband's property in the Court of Common Pleas of Philadelphia County pursuant to 48 P.S. § 132. On November 10, 1966 the state court issued its order[1] which essentially placed particularly described real estate owned by Dr. Ehrlich in receivership. It also authorized the receiver:

"To seize and take possession of all the property, assets and effects of the defendant not limited to [the described real estate]."

Another provision of the order provided that:

"It is further decreed that the defendant, his agents, servants and employees and all other persons be and the same are hereby enjoined and restrained from selling, transferring, concealing, disposing of or in any manner interfering with any of the property of the defendant or taking possession of, or in any way interfering with any part thereof . . ."

Dr. Ehrlich was never personally served with this order but he did have knowledge of it.

On the 28th day of December, 1966 Dr. Ehrlich, in a Nevada proceeding, divorced Selma and on the same date mar-

1. Common Pleas No. 6, September Term 1966, No. 2508.

ried defendant Shirley Ehrlich (Shirley). The bona fides of this divorce decree is not under attack for the record indicates that Dr. Ehrlich had established a valid residence in the State of Nevada.

Prior to the divorce, on November 23, 1966 Provident was furnished with a true and correct copy of the court order of November 10, 1966. On February 20, 1967 Dr. Ehrlich wrote to Provident requesting forms for change of beneficiary and instructing them to change the primary beneficiary on his life insurance from Selma Ehrlich to Shirley Ehrlich. He further directed that this letter would serve in lieu of an official change of beneficiary form until he could complete one. Provident refused its insured's request insisting that the court order prohibited them from so acting. In response, Dr. Ehrlich wrote back to Provident notifying them that if they could not change the beneficiary, they should permit the insurance to lapse. However, he still indicated his specific intention to continue the insurance, if he could change the beneficiary. Upon receipt of this correspondence from Dr. Ehrlich Provident notified Selma's counsel that all of her rights were protected and that she would be continued as the primary beneficiary. Counsel relayed this information to Selma and she took no further action regarding the insurance.

Upon the death of Dr. Ehrlich in 1972, Selma, as the beneficiary whose name appeared on the insurance policy, claimed that she was entitled to the proceeds of the insurance policy. On the other hand, Shirley argued that she was the beneficiary of the policy and entitled to the proceeds because upon receipt of the deceased's direction to change the beneficiary, Provident had no choice but to accede to the directive. As a result of these conflicting claims Provident filed the interpleader action and deposited $25,630.26 into the registry of this Court.

Shirley and Selma have each filed counterclaims. Shirley contends that if it is determined that Dr. Ehrlich did not do enough to install her as the beneficiary, it was due to Provident's improper conduct and misleading legal advice which would render Provident independently liable to Shirley.

Selma reasons that there was a contract of insurance under which she was the named beneficiary. She asserts that due to the advice tendered by Provident she was lulled into a false sense of security and did not pursue this issue any further.

The first issue presented to this Court is who is the legal beneficiary of the insurance policy? The policy permitted the insured to change the beneficiary and provided that:

"Every change of beneficiary must be made in writing and filed with the Company at its Home Office, accompanied by this policy, and the Company shall be charged with notice of such change only when endorsed on this policy by the Company."

Dr. Ehrlich twice, in writing, notified Provident of his desire to change the beneficiary. Provident refused and would not even forward the change of beneficiary forms to Dr. Ehrlich.

The law in Pennsylvania is clear that where an insured wishes to change the beneficiary of his insurance, he need only do that which is reasonable under the circumstances to accomplish the desired result. Ruggeri, Admx. v. Griffiths, 315 Pa. 455, 457, 173 A. 396 (1934). Justice Eagen speaking for the majority of the Pennsylvania Supreme Court in Breckline v. Metropolitan Life Insurance Co., 406 Pa. 573, 577, 178 A. 2d 748, 750 (1962) stated the prevailing standard.

"This Court has repeatedly ruled that where the provisions of a life insurance policy require that a written change of beneficiary be filed with the company in order to be effective, and every reasonable effort is made to comply with the requirements of the policy, the change of beneficiary is valid and binding, even though it is

not filed with the insurer before the death of the insured. The Court logically reasoned that such provisions are procedural in nature, written into the contract for the company's benefit and may be waived. *See*, Riley v. Wirth, 313 Pa. 362, 169 A. 139 (1933); Ruggeri v. Griffiths, 315 Pa. 455, 173 A. 396 (1934); and, Skamoricus v. Konagiskie, 318 Pa. 128, 177 A. 809 (1935). Other jurisdictions have arrived at the same result by concluding that only substantial compliance with such provisions of the policy is necessary. *See*, Kochanek v. Prudential Ins. Co., 262 Mass. 174, 159 N.E. 520 (1928); Prudential Ins. Co. v. Swanson, 111 N.J.Eq. 477, 162 A. 597 (1932)."

■ We believe that Dr. Ehrlich made every reasonable effort to comply with the policy's requirements to change the beneficiary. As a matter of fact, Provident's house counsel testified that even if Dr. Ehrlich mailed them his policy with the proper change of beneficiary forms, it would have been a futile act. Provident's policy is that whenever a husband desires to change the beneficiary of his insurance from his divorced wife to his second wife, Provident would refrain from making the change if the first wife or her attorney protest. It would not be reasonable for us to require an insured to do a vain and useless act. *See*, Fedas v. Insurance Co. of the State of Pennsylvania, 300 Pa. 555, 151 A. 285 (1930). In addition, we do not believe, as Selma asserts, that it would be reasonable to require Dr. Ehrlich to return to Pennsylvania, and thus submit himself to the jurisdiction of Pennsylvania in order to compel Provident to change the beneficiary on his insurance policy.

■ Furthermore as Justice Eagen stated above, an insurance company may waive procedural provisions set forth in the policy which are included for the insurer's benefit. In the case of Riley v. Wirth, *supra*, the Court was presented with an insurance policy whose change of beneficiary clause was identical to the clause in the instant policy. In that

case, which was an interpleader action, where two parties claimed the proceeds of a life insurance policy, the Pennsylvania Supreme Court held that the insurance company's payment of the proceeds into the registry of the court was conclusive proof of the insurer's waiver of the requirement of having the policy endorsed by the company to effectuate the change of beneficiary. We believe that proposition of law to be equally applicable in the present case and compels the conclusion that Shirley is the legal beneficiary of the insurance policy.

The next issue before the Court is the effect of the court order of November 10, 1966. The order was secured pursuant to the Act of May 23, 1907, 48 P.S. § 132 which contemplates a proceeding against a defendant who is outside the jurisdiction and is therefore purely in rem. Boudwin v. Boudwin, 320 Pa. 147, 182 A. 536 (1936).

Shirley avers inter alia, that the insurance policy was not affected by the court order because it was not specifically included in the property which was ordered to be seized. Only real estate owned by Dr. Ehrlich was specifically described in the complaint and court order. According to the Pennsylvania Supreme Court's interpretation of the aforementioned statute, the failure to specifically mention the insurance policy in the property to be seized is a fatal defect. In the case of Boudwin v. Boudwin, *supra*, at 150, 182 A. at 537 the Court stated:

"The bill mentioned no specific property owned by the defendant in the county and simply stated that the defendant had property, real and personal, therein. Such an averment was insufficient upon which to found jurisdiction. *The property of the defendant which the court is asked to seize must be specifically set forth in the bill.*" (emphasis added).

■ In the instant case Selma's court order had no effect on the insurance. The broad catch-all description she employed was ineffectual. We are there-

fore impelled to conclude that Shirley, by operation of law, is the legal beneficiary of the life insurance policy and the court order has no bearing on this determination.

At this juncture, we are obliged to consider Selma's counterclaim in which she asserts that Provident is independently liable to her for damages equal to the proceeds of the insurance policy. Her theory of recovery is one of negligent misrepresentation and/or contract estoppel. Prior to the evaluation of the substance of this counterclaim a discussion of our jurisdiction over this counterclaim seems appropriate.

■ Since Selma's counterclaim arises out of the transaction that is the subject matter of the plaintiff's suit, this counterclaim is a compulsory one and therefore no independent basis for jurisdiction need be established. Kaiser Aluminum & Chemical Sales, Inc. v. Ralston Steel Corp., 25 F.R.D. 23 (D.C.Ill. 1960); West Coast Tanneries, Limited v. Anglo-American Hides Co., 20 F.R.D. 166 (D.C.N.Y.1957). The fact that this counterclaim is appended to an interpleader action presents no additional problem since an allegation by one or more claimants that the stakeholder in an interpleader action may be subject to an independent liability may be raised as a counterclaim pursuant to Fed.R. Civ.P. 13. United Benefit Life Ins. Co. v. Katz, 155 F.Supp. 391 (E.D.Pa.1957); 3A J. Moore, Federal Practice ¶ 22.15, at 3129 (2d ed. 1970).

■ Furthermore we foresee no difficulty arising out of the fact that Provident deposited $25,630.26 into the registry of this Court in its interpleader action and now faces potential liability for double that amount due to Selma's counterclaim. Case law indicates that in a statutory interpleader action, for the court to have jurisdiction, the stakeholder must deposit the highest amount claimed by the defendants with the registry of the court. Metal Transport Corp. v. Pacific Venture Steam Corp., 288 F.2d 363 (2d Cir. 1961); Westing-

house Electric Corp. v. United Electrical Radio and Machine Workers, 194 F.2d 770 (3d Cir. 1952); United Benefit Life Ins. Co. v. Leech, 326 F.Supp. 598 (E.D. Pa.1971).

In the instant case Provident did deposit the entire fund at issue in the interpleader action into the registry of this Court. Selma's counterclaim alleges a separate and independent liability. We do not believe that the law would require Provident to deposit the amount of damages claimed in the counterclaim into the registry of this Court over and above the fund originally deposited on the interpleader action. If we held to the contrary, any stakeholder would be reluctant to commence an interpleader action for fear of being compelled to deposit a large amount of his own funds as damages claimed in any counterclaim alleged. Provident did not raise this issue and as was in the case of United Benefit Life Ins. Co. v. Katz, 155 F. Supp. 391, 394 (E.D.Pa.1957) we shall not permit this issue to impede our determination of all facets of the present case. It would be contrary to every notion of judicial economy to dismiss this counterclaim sua sponte because the plaintiff in the interpleader action did not also deposit the damages sought in a claimant's counterclaim into the registry of the court. If the counterclaim were dismissed, Selma would simply reassert it in a new cause of action. The efforts and time expended by this Court would be duplicated by this second forum. Not only would this be extremely wasteful of judicial resources but it would foster multiple litigation against the stakeholder which would be contrary to a stated purpose of an interpleader action. Cf. Farmers Elevated Mut. Ins. Co. v. Jewett, 394 F.2d 896 (10th Cir. 1968).

■ In addition, we are not unmindful of another important function of an interpleader action—to protect the stakeholder from double liability on the fund which is at issue. Hallin v. C. A. Pearson, Inc., 34 F.R.D. 499 (D.C.Cal. 1963); Joseph F. Hughes & Co. v. Harry S. Mickey, Inc., 211 F.Supp. 298 (D.

C.Md.1962). We strongly emphasize that in the instant case Selma's counterclaim seeks damages as a result of Provident's actions and does not seek the fund deposited with the registry of this Court. By this Court entertaining this counterclaim we are still protecting the stakeholder from double liability on the fund deposited with this Court. The counterclaim simply is asserting a separate cause of action whose alleged damages happen to equal the amount of the fund deposited in the registry of this Court in the interpleader action. Having resolved any potential jurisdictional problems we now proceed to the substance of Selma's counterclaim.

In her counterclaim, Selma charges that if she is determined not to be the legal beneficiary of the policy, then she is still entitled to recover an amount equal to the proceeds of the policy because of her reliance upon the communications of Provident to her attorney. In its letter of May 22, 1967, after having refused to act upon Dr. Ehrlich's requested change of beneficiary, Provident's attorney assured Selma's counsel that:

> "Mrs. Ehrlich's [Selma's] rights are fully protected in that she is continued as beneficiary . . ."

Selma asserts that Provident should be estopped from denying its liability to her because she relied upon the advice of the insurer. If this advice had not been so positive and conclusive, she could have gone into court and secured a supplemental order to specifically include the insurance.

Under the Act of 1907 if Selma had gotten a supplemental order specifically including the insurance, she would have stood in her husband's stead regarding his rights in the insurance policy. See, Cook v. Cook Sr., 115 P.L.J. 165 (1966).[2]

The law is clear that where an insured relies upon a representation of his insurer and changes his position or does nothing in reliance thereon and injury results, an independent liability may arise from the insurance company. Trowbridge v. Prudential Insurance Company of America, 322 F.Supp. 190 (S.D.N.Y.1971); Smith v. Metropolitan Life Ins. Co., 222 Pa. 226, 71 A. 11 (1908); Phillips v. Continental Assurance Company, 210 Pa.Super. 178, 231 A. 2d 422 (1967).

In the Phillips case, the insurer, upon the insured's request and contrary to the provisions of the policy, changed the beneficiary of the insurance. Under the terms of the policy and the law the insurer was compelled to pay the original named beneficiary of the policy. In addition, the court sitting in judgment of this case indicated that the insurance company should have given its insured notice of the objection to the changing of the beneficiary so that the insured could have taken "whatever action he desired to obviate those objections." Id. at 182, 231 A.2d at 423. Failure to so act or making a contrary representation that the change is valid estopped the insurance company from denying liability to the subsequent beneficiary who could not collect solely under the terms of the policy. This resulted in the insurer twice paying out the proceeds of the policy.

We believe this legal theory to be applicable herein also. Provident through its representation that Selma was the beneficiary and her rights would be continued as such, made an as-

---

2. The *Cook* case concerned a wife's ability to utilize the Act of 1907 to claim her husband's rights in a pension plan. The court stated that she could claim the rights which inured to her husband under the pension plan. The court was guided by Pennsylvania's overriding policy to protect deserted wives. Although Selma was not legally deserted in the instant case, we believe that she and her children left behind in Pennsylvania would still come under the protective auspices of this policy. We are convinced that the Act of 1907 could have been applied in the instant case so that all of Dr. Ehrlich's rights under the insurance policy, including the right to change the beneficiary, would have inured to Selma's benefit.

sertion that Selma relied upon to her detriment. We can foresee no reason why the mere fact that she was not yet in the shoes of her husband, the insured, should require a different determination. Provident treated her as standing in her husband's stead and was at fault by negligently lulling her into a false sense of security which prevented her from securing a supplemental order to legally place her in the insured's stead. We can not permit Provident, through their misrepresentations to claim that Selma has no rights in the policy.

The Pennsylvania Supreme Court has set forth the elements of equitable estoppel in the case of Northwestern National Bank v. Commonwealth, 345 Pa. 192, 196, 197, 27 A.2d 20, 23 (1942). The Court stated:

> "Equitable 'estoppel arises when one of his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. In this situation, the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct, or statements': 31 C.J. S., § 59, p. 237; Howe v. Mimm, 105 Pa.Super. 474, 161 A. 603, 605."

The Court further clarified this equitable doctrine in the case of Nesbitt v. Erie Coach, 416 Pa. 89, 95, 96, 204 A.2d 473, 476, (1964).

> "Equitable estoppel applies where, because of something that has been done, a party is denied the right to plead or prove an otherwise important

fact: 19 Am.Jr. Estoppel § 34 (1939). It is based upon the principal that 'a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has in good faith relied thereon.'" (citations omitted).

Under the facts and circumstances of this case we believe that the doctrine of equitable estoppel is applicable. The insurer has obligated itself under the provisions of the policy and its correspondence to pay the principal of the policy to the named beneficiary i. e., Selma Ehrlich. We are of the further opinion that it would result in gross inequity to permit Provident to escape the terms of its own undertaking.

This memorandum is adopted as findings of fact and conclusions of law as required under Fed.R.Civ.P. 52(a).

## ORDER

In the interpleader action the Court finds in favor of the claimant Shirley Ehrlich a/k/a Shirley Joan Ehrlich and DIRECTS the clerk of this court to pay over unto the said Shirley Ehrlich a/k/a Shirley Joan Ehrlich and her attorney the amount deposited into the registry of this court by Provident Mutual Life Insurance Co. of Philadelphia. The clerk shall deliver the check in payment of said sum to M. Stuart Goldin, attorney for Shirley Ehrlich a/k/a Shirley Joan Ehrlich.

In the counterclaim of Selma Ehrlich v. Provident Mutual Life Insurance Co. of Philadelphia the Court finds in favor of the counterclaimant and DIRECTS the clerk of this court to enter judgment in favor of Selma Ehrlich in the sum of $25,000 with interest and costs.

It is so ordered.