592 F.2d 504
 LIBBY, McNEILL, AND LIBBY, a Maine Corporation, Plaintiff-Appellee,
v.
CITY NATIONAL BANK et al., Defendants-Appellants.
City National Bank, a national banking association,
Defendant and Third Party Plaintiff-Appellant,
Dorothy W. Chu and David C. Chu, Third Party Defendants-Appellants.
 No. 75-3218.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 28, 1978.
Rehearing Denied March 19, 1979.
 
 Morris Lavine (argued), Los Angeles, Cal., for defendants-appellants.
 Richard S. Berger (argued), of Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before TRASK and WALLACE, Circuit Judges, and HOFFMAN,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 City National Bank (CNB) and the Chus appeal from a judgment of the district court which found Libby, McNeill and Libby (Libby) liable to various other parties, but which allowed Libby to offset that liability against what otherwise would have been an obligation to CNB. The district court also found the Chus liable to CNB, a judgment from which they lodge a somewhat halfhearted appeal. We vacate in part, affirm in part, reverse in part, and remand. We also dismiss a portion of the appeal for lack of jurisdiction.
 
 
 2
 * On November 30, 1971, Libby entered into a "Packing Agreement" with Shanghai Instant Foods, Inc. (Shanghai), a corporation of which David Chu was the majority shareholder. The Agreement, similar to those that Libby had entered into with other companies, required Shanghai to produce packaged frozen meals for Libby according to Libby's specifications.
 
 
 3
 Libby obligated itself under the Agreement to pay Shanghai $1.09 plus "actual costs" in the form of an adjustable base price. The Agreement also contained provisions regulating Shanghai's purchase of ingredients and packaging materials that were to be utilized in production of the meals. Generally these gave Libby significant control over the prices and sources of the ingredients and materials to be purchased.
 
 
 4
 Shanghai's purchases of these supplies were often made under "blanket purchase orders"[1] and telephone authorizations that Libby placed with a variety of other companies. Libby required Shanghai to make its purchases from vendors that Libby recommended unless Shanghai could find a better price and Libby approved. Shanghai in fact placed specific orders pursuant to Libby's blanket orders, and was invoiced directly for supplies delivered to it.
 
 
 5
 On May 20, 1971, prior to the establishment of the Packing Agreement between Libby and Shanghai, Shanghai obtained financing from CNB. Under the lending agreement, Shanghai gave CNB a security interest in all of Shanghai's accounts receivable. This security interest was evidenced by a properly perfected financing statement, and the Chus personally guaranteed the loan.
 
 
 6
 In July of 1972, various companies that were supplying Shanghai in accordance with Libby blanket purchase orders complained to Libby that Shanghai had ceased to make payments to them. When these suppliers advised that they were going to look to Libby for payment, Libby stopped making payments to Shanghai. At this time Libby owed Shanghai.$138,271.73 for dinners delivered, and Shanghai owed Libby $11,812.41 for delivery of corn. The net obligation of Libby to Shanghai was thus $126,459.32.
 
 
 7
 In March 1973, Shanghai filed a voluntary petition in bankruptcy, and a trustee was appointed. In August 1973, while the bankruptcy proceedings, which have since closed, were still pending, Libby commenced this action by filing its complaint in interpleader and for declaratory relief in the United States District Court. Libby interpleaded the net sum it owed to Shanghai, and named as defendants the trustee in bankruptcy, CNB, and the various suppliers who had not been paid by Shanghai. Libby asked for a declaratory judgment freeing it from claims of the suppliers, or alternatively, relieving it from any debt to Shanghai to the extent that it was required to pay the suppliers.
 
 
 8
 The trustee disclaimed any interest in the fund because he believed that the money belonged to CNB, pursuant to Shanghai's assignment of its accounts receivable. In fact, CNB was the only defendant to allege any interest in the funds. Several suppliers did not answer and defaults were entered against them, while those who did answer disclaimed any interest in the fund and counterclaimed, alleging Libby's direct and independent liability to them for supplies provided to Shanghai. One supplier, Kaiser Aluminum & Chemical Sales, Inc. (Kaiser), had filed an action in state court which was later transferred to the district court and consolidated for trial with the rest of this action.
 
 
 9
 The district court found that it had jurisdiction over the counterclaims, as well as the interpleader and declaratory judgment actions, and that the bankruptcy proceedings did not preclude such jurisdiction. The district judge granted the suppliers' relief pursuant to their counterclaims, and relief to Kaiser in its consolidated action.[2] He allowed Libby the offset that it requested against its obligation to Shanghai, and thus its obligation to CNB, as the latter's assignee. In addition, the court found that the Chus were indebted to CNB pursuant to their guarantee of Shanghai's obligation to CNB.
 
 
 10
 From this judgment, CNB and the Chus appeal. Numerous errors are alleged, many merely repetitions or restatements of others. We deal only with those that merit discussion, beginning with challenges to the district court's jurisdiction.
 
 II
 
 11
 CNB argues that the district court did not have jurisdiction of the interpleader action because it was the only defendant that claimed any interest in the fund. Of course, a basic jurisdictional requirement of a statutory interpleader action[3] is that there be "adverse claimants" to a particular fund. 28 U.S.C. § 1335 (1976); Gaines v. Sunray Oil Co., 539 F.2d 1136, 1141 (8th Cir. 1976). Thus, CNB argues, an interpleader defendant who disclaims any interest in the "fund" cannot be called an "adverse party." While this argument seems simple enough on its face, it is actually somewhat complicated.
 
 
 12
 In the earlier, equitable interpleader practice, if a claimant alleged any independent liability of the stakeholder to the claimant in addition to a claim against the interpleaded fund, interpleader would not lie. See, e. g., C. Wright, Handbook of the Law of Federal Courts § 74, at 364 (3d ed. 1976). The modern trend has been to the contrary, and it "now seems to be settled that (Fed.R.Civ.P.) Rule 13 which provides for compulsory and permissive counterclaims is applicable to interpleader suits." Dakota Livestock Co. v. Keim, 552 F.2d 1302, 1307 (8th Cir. 1977). Thus, the mere potentiality of independent stakeholder liability, separate from liability for the interpleaded fund, will not defeat interpleader jurisdiction. Yet, the defendant in an interpleader action who also counterclaims must still make Some claim against the interpleaded fund. See Hebel v. Ebersole, 543 F.2d 14 (7th Cir. 1976); Gaines v. Sunray Oil Co., supra, 539 F.2d at 1141-42; Provident Mut. Life Ins. Co. v. Ehrlich, 374 F.Supp. 1134, 1136, 1138-39 (E.D.Pa.1973), Aff'd in part and vacated and remanded in part on other grounds, 508 F.2d 129 (3d Cir. 1975); Trowbridge v. Prudential Ins. Co. of America, 322 F.Supp. 190, 192-93 (S.D.N.Y.1971). Here, only one party made a claim against the fund and that is insufficient.[4]
 
 
 13
 It is true that some cases have appeared to hold or indicate that the mere potentiality of double liability on the part of the stakeholder may be sufficient to sustain an interpleader action, even absent true claimant adversity as to the particular fund proffered by the interpleader plaintiff. See Dakota Livestock Co. v. Keim, supra, 552 F.2d at 1304-07; Royal School Labs., Inc. v. Town of Watertown, 358 F.2d 813, 814-15 (2d Cir. 1966); Stuyvesant Ins. Co. v. Dean Constr. Co., 254 F.Supp. 102, 105-09 (S.D.N.Y.1966), Aff'd sub nom. Stuyvesant Ins. Co. v. Kelly, 382 F.2d 991 (2d Cir. 1967) (per curiam). In Dakota Livestock Co., one of the plaintiff auctioneers of livestock, Dakota, sought to interplead, among others, the former owner of certain cattle, one Zurcher, and the bank which had consigned the cattle to Dakota. The bank had taken over the cattle from the lot of the bankrupt buyers pursuant to the terms of a financing agreement. Although Zurcher had never been paid for the cattle, he alleged that he had no interest in the interpleaded proceeds of the cattle sales, since his claim was that Dakota was liable to him as a converter. In response, the Eighth Circuit stated:
 
 
 14
 Zurcher is seeking compensation for the loss of his cattle which loss resulted ultimately from the sale of the cattle by Dakota at the instigation of the Bank. That Zurcher is not seeking to be paid out of the particular fund in the registry of the district court is beside the point. The money that was deposited in court represents the proceeds of Dakota's sale of the cattle and in a sense stands in place of the cattle. We do not think that Zurcher can in effect surrender that fund to the Bank or to the Trustee and thus avoid controversy with them while at the same time reserving his claim against Dakota by the simple device of turning his back on that particular fund. It is obvious that Zurcher can afford to take that action only because he feels that he can safely rely on the general assets of Dakota to satisfy any judgment that he may ultimately obtain against it. If Zurcher can thus avoid the jurisdiction of the interpleader court, so perhaps can any other defendant who has an independent claim against a solvent stakeholder.
 
 
 15
 Dakota Livestock Co. v. Keim, supra, 552 F.2d at 1307. In Royal School Labs., Inc., claims against the town by both an unpaid materialman and the assignee of the insolvent contractor for work performed were, in the court's words, "inextricably interrelated." 358 F.2d at 815. The same is true of Stuyvesant Ins. Co. v. Dean Constr. Co., where the district court found that interpleader was appropriate although distinct claims were asserted against two separate entities: a bond and the collateral put up to acquire the bond. 254 F.Supp. at 108.
 
 
 16
 Even if we were to adopt a theory of jurisdiction that would allow claims against conceptually distinct entities to justify a single interpleader action, we believe that each of the cases supporting it is distinguishable from the facts before us. Libby engaged in several discrete transactions: the Packing Agreement with Shanghai, and numerous blanket purchase orders issued to various suppliers. The suppliers each alleged Libby's independent liability based upon its own independent contractual relationship with Libby, and each totally disclaimed any interest in the proceeds relating to the Packing Agreement, to which none was a party. In Gaines v. Sunray Oil Co., the court pointed out that the claim involved there arose from a different source than did the interpleaded fund and was, therefore, not adverse. 539 F.2d at 1142. In distinguishing Gaines, the court in Dakota Livestock Co. stated:
 
 
 17
 The result here reached does not conflict with our holding in Gaines v. Sunray Oil Co., supra. In that case we upheld the action of the district court in dismissing from the case a group of defendants who had disclaimed any interest in the fund that had been deposited in court. However, the defendants in that case with respect to whom the action was dismissed based their claims on transactions entirely separate and distinct from the transactions that had produced the deposited fund. Here, the funds deposited in the district court were produced by the very acts of the plaintiffs on which (the defendant's purported "independent" claims against the plaintiffs) are based.
 
 
 18
 552 F.2d at 1308.
 
 
 19
 While the result we reach does raise the possibility of multiple liability for parties such as Libby, interpleader is designed to protect the stakeholder from such liability only when based upon the particular fund proffered by the interpleader plaintiff, Provident Mut. Life Ins. Co. v. Ehrlich, supra, 374 F.Supp. at 1138, or, put another way, "When only a single obligation is owing." Trowbridge v. Prudential Ins. Co. of America,supra, 322 F.Supp. at 192 (emphasis in original). See Gaines v. Sunray Oil Co., supra, 539 F.2d at 1142; Savage v. First Nat'l Bank & Trust Co., 413 F.Supp. 447, 452-53 (N.D.Okl.1976). Thus, "(i)t is clearly Possible that more than a single obligation is owed, and the possibility of a double recovery justified by law is very real." Trowbridge v. Prudential Ins. Co. of America,supra, 322 F.Supp. at 193 (emphasis in original). While interpleader may be useful as a means of avoiding potential multiple litigation as well as multiple liability, Dakota Livestock Co. v. Keim, supra, 552 F.2d at 1306, interests of party convenience and judicial economy that would be served by trial of all claims in a single proceeding "cannot compel the otherwise inappropriate joinder of claims in interpleader." Gaines v. Sunray Oil Co., supra, 539 F.2d at 1142.
 
 
 20
 We thus conclude that the district court did not have jurisdiction pursuant to the interpleader statute in this case; we vacate the interpleader judgment and remand for its dismissal. The district judge, however, relied upon the diversity statute, 28 U.S.C. § 1332 (1976), for jurisdiction over the declaratory relief action. We therefore next consider whether the court did have jurisdiction pursuant to this statute.[5] We conclude that jurisdiction did exist except as to counterclaimants Champion and Winter Garden, whose claims do not meet the "amount in controversy" requirements of that section.
 
 
 21
 Libby, in addition to its claim in interpleader, also filed for declaratory relief against the same group of defendants. Jurisdiction over this claim was founded in diversity, and all of the defendants were diverse as against Libby. Diversity jurisdiction also requires, however, that more than $10,000 be "in controversy." 28 U.S.C. § 1332(a). Regardless of how we look at the declaratory judgment action or the counterclaims,[6] neither claims against nor by Winter Garden and Champion satisfy the amount in controversy requirement. Winter Garden's claim against Libby was for only $1,070.46, and Champion's was for only $1,919.41.
 
 
 22
 Nor may these claims be aggregated with the others so as to come within the amount in controversy requirement. As we have stated, the tests for aggregating claims of one plaintiff against multiple defendants and of multiple plaintiffs against one defendant are "essentially the same . . . : the plaintiff's claims against the defendants must be common and undivided so that the defendants' liability is joint and not several." United States v. S. Pac. Transp. Co., 543 F.2d 676, 683 n.9 (9th Cir. 1976); See Aetna Cas. & Sur. Co. v. Graves, 381 F.Supp. 1159, 1162-63 (W.D.La.1974); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3704, at 414-17 (1976). There is no question but that if Libby were liable to the suppliers, the several liabilities arose out of Libby's independent relationships with each supplier. Nor is jurisdiction over these two suppliers' claims saved by some type of ancillary or, more properly, pendent party jurisdictional theory in these circumstances. Pendent jurisdiction in this circuit does not reach parties for whom there is no independent basis for federal jurisdiction, E. g., Blake v. Pallan, 554 F.2d 947, 957-58 (9th Cir. 1977); Ayala v. United States, 550 F.2d 1196, 1198-2000 (9th Cir.), Cert. dismissed, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978); Aldinger v. Howard, 513 F.2d 1257, 1259-61 (9th Cir. 1975), Aff'd on other grounds, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); Hymer v. Chai, 407 F.2d 136, 137-38 (9th Cir. 1969), including those who fail to meet the amount in controversy requirements of federal diversity jurisdiction, Hymer v. Chai, supra, 407 F.2d at 137-38.[7] Winter Garden's and Champion's claims must stand or fall on their own feet.
 
 
 23
 We conclude that as to Champion and Winter Garden, the amount in controversy prerequisite of the diversity statute is not met. The judgments in their favor therefore must be vacated. The remaining suppliers' counterclaims all independently satisfy the jurisdictional requirements of section 1332. We are, however, faced with further jurisdictional challenges.
 
 
 24
 During oral argument, CNB asserted for the first time that the incorrectness of venue in the Central District of California for Libby's declaratory relief action and the suppliers' counterclaims is fatal to their claims or, in other words, is jurisdictional. This position demonstrates a complete misunderstanding of the venue concept. Venue is not jurisdictional. Neirbo Co. v. Bethlehem Shipbldg. Corp., 308 U.S. 165, 167-68, 60 S.Ct. 153, 84 L.Ed. 167 (1939); C. Wright, Handbook of the Law of Federal Courts § 42, at 169-70 (3d ed. 1976). Thus, even though there was no jurisdiction over the interpleader action and, therefore, the interpleader venue provision, 28 U.S.C. § 1397 (1976), was inapplicable, resulting in improper venue for both Libby's declaratory relief action and the suppliers' counterclaims, any impropriety was waived because there was no timely objection. 28 U.S.C. § 1406(b) (1976); Fed.R.Civ.P. 12(h)(1); see Neirbo Co. v. Bethlehem Shipbldg. Corp., supra, 308 U.S. at 167-68, 60 S.Ct. 153; Kentucky Fried Chicken Corp. v. Diversified Packaging Corp., 549 F.2d 368, 392 (5th Cir. 1977).
 
 
 25
 Finally, CNB suggests that the district court had no jurisdiction over the subject matter of this action because of the then-pending bankruptcy proceedings. This contention is wholly without merit. As CNB itself recognizes, the trustee disclaimed any interest in Libby's obligation to Shanghai, concluding that CNB's claim against Shanghai pursuant to its security interest in the latter's accounts receivable exceeded the value of the security. The trustee's recommendation that the accounts receivable, including that of Libby, be abandoned was approved by the bankruptcy referee. The bankruptcy court thus had no jurisdiction to adjudicate the rights of the parties in the obligation. See In re St. Cloud Tool & Die Co., 533 F.2d 387, 390 (8th Cir. 1976); 2 Collier on Bankruptcy P 23.05(5) (14th ed. 1976). See also Wilcox v. H.L. Cox & Son, 338 F.2d 51, 52 (5th Cir. 1964) (per curiam). Therefore, there is no question that the district court did not interfere with the bankruptcy proceedings. Cf. Dakota Livestock Co. v. Keim, supra, 552 F.2d at 1305 ("(I)f a party is in the actual possession of money or property the ownership of which is disputed, his right to interplead the funds is not affected by the fact that one of the claimants is a trustee in bankruptcy who contends that the funds belong to the estate that he is administering.").
 
 III
 
 26
 As to the merits, CNB argues that the district court incorrectly determined that Libby was independently liable to the suppliers. Assuming, however, that the trial court was correct about Libby's independent liability, CNB suggests the district judge was wrong in allowing Libby to offset the total of the amounts that Libby owed the various suppliers, including interest, against what it would otherwise owe CNB as the assignee of Shanghai's accounts receivable.
 
 A.
 
 27
 We are faced at the outset with a serious jurisdictional question with respect to one aspect of CNB's appeal. It is, of course, a "familiar principle that only a party aggrieved by a final judgment may appeal from it." Goldstein v. Andresen & Co., 465 F.2d 972, 973 n.1 (5th Cir. 1972) (per curiam); See, e. g., Webb v. Beverly Hills Fed. Savs. & Loan Ass'n, 364 F.2d 146, 149 (9th Cir. 1966); United States v. Adamant Co., 197 F.2d 1, 5 (9th Cir.), Cert. denied, 344 U.S. 903, 73 S.Ct. 283, 97 L.Ed. 698 (1952). It follows that a party may only appeal to protect its own interests, and not those of a coparty. E. g., Seaboard Sur. Co. v. United States, 306 F.2d 855, 859 (9th Cir. 1962). In the case now before us, CNB attempts to appeal from the suppliers' judgments against Libby as well as Libby's judgment of offset against CNB. We do not believe that CNB has standing to appeal the suppliers' judgments, and accordingly dismiss CNB's appeals from them.
 
 
 28
 We are aware that this is not the simple case where the outcome of the appeal can have absolutely no effect on the interests of the appellant. Cf., e. g., Mayer v. Nat'l Missile and Elecs., Inc., 326 F.2d 401, 402 (9th Cir. 1964) (debtors who have no equity in home have no appealable interest where contest is solely between judgment creditor and mortgagee). But here, Libby had been found directly liable to the suppliers and, therefore, the district court was forced to decide whether Libby was entitled to offset that liability. Nonetheless, " 'the (appellant's) interest must be immediate and pecuniary and not a remote consequence of the judgment.' " Id. (quoting Hamilton Trust Co. v. Cornucopia Mines Co., 223 F. 494, 499 (9th Cir. 1915)). CNB has no direct interest in the counterclaims of the suppliers. The trial court found that each of them stated claims in the nature of contract against Libby based upon the blanket purchase orders, transactions solely between Libby and themselves. This is not a case such as United States ex rel. Celanese Coatings Co. v. Gullard, 504 F.2d 466, 469 (9th Cir. 1974), where a surety who is sued directly along with his principal is permitted to appeal although the principal chooses not to. Any concern that CNB has in the Libby-suppliers litigation arises only out of CNB's own contractual relationship with Shanghai. Neither Shanghai nor CNB was directly involved in the transactions that created Libby's liability to the suppliers.[8] Indeed, the Packing Agreement between Libby and Shanghai specifically permitted Libby to purchase ingredients on behalf of Shanghai without consulting with or securing the permission of Shanghai.
 
 
 29
 We believe that this situation is substantially similar to that considered in SEC v. Secs. Northwest, Inc., 573 F.2d 622 (9th Cir. 1978). There, the priority of claims against a debtor corporation had been established in liquidation proceedings. A former officer and apparent shareholder of the debtor corporation had not participated in the liquidation proceedings but nonetheless sought to upset that priority. His purported interest in the appeal was his own liability for the debtor's unpaid taxes. Id. at 625-26. We concluded that this was not a sufficient interest to sustain an appeal:
 
 
 30
 The short of the matter is that appellant seeks to champion the rights of another, the IRS, to priority satisfaction among those claims allowed in the liquidation proceeding. His interest in the priorities accorded by the trustee and approved by the district court, although indirectly pecuniary, is remote and consequential rather than direct and immediate; he thus lacks standing to maintain the appeal.
 
 
 31
 Id. (footnote omitted). CNB likewise does not possess the requisite appealable interest in the suppliers' judgments against Libby, and its appeals from those judgments must therefore be dismissed.
 
 
 32
 Libby, the only party with an appealable interest in the judgments against it of independent liability, argued vigorously before the district judge that it was not liable directly to the suppliers, but has chosen not to appeal those judgments. Thus, they are not before us, and we move on to consider CNB's second substantive argument, that Libby should not be entitled to an offset against CNB.
 
 B.
 
 33
 The district court found as a matter of fact, and concluded as a matter of law, that there was a failure of consideration and a breach of the Packing Agreement between Libby and Shanghai because of the latter's failure to pay the suppliers for the ingredients used in preparation of dinners delivered to Libby.
 
 
 34
 The interpretation of a contract and the determination as to its breach are a mixed question of fact and law. While we accept factual findings as to what the parties said or did unless they are clearly erroneous, "(t)he principles of contract interpretation to be applied to those facts . . . are legal issues which this court can review." United States ex rel. Union Bldg. Materials Corp. v. Haas & Haynie Corp., 577 F.2d 568, 572 (9th Cir. 1978). See Republic Pictures Corp. v. Rogers, 213 F.2d 662, 664-65 (9th Cir.), Cert. denied, 348 U.S. 858, 75 S.Ct. 83, 99 L.Ed. 676 (1954).
 
 
 35
 There was nothing in the contract to suggest that Shanghai had an obligation to pay its suppliers prior to receiving payment from Libby. Indeed, Libby was obligated to pay to Shanghai Shanghai's actual costs plus $1.09 per case ten days after Libby received the invoices for dinners delivered to and accepted by Libby. The Packing Agreement provided for periodic adjustments of the base price for the dinners, depending upon the actual costs incurred by Shanghai. Thus, Libby was obligated to Shanghai upon the delivery of the acceptable dinners, the consideration for which Libby had bargained.[9] We conclude, therefore, that the district court was incorrect in concluding that Shanghai breached the contract and that there was a failure of consideration.
 
 
 36
 This does not mean, however, that Libby was not entitled to offset. We thus face the question of what amounts are entailed in Libby's obligation to pay CNB as Shanghai's assignee. Although we may disagree with the district judge's reasoning, we may nevertheless affirm his disposition "on any ground squarely presented on the record." Grosz v. Andrus, 556 F.2d 972, 974 n.3 (9th Cir. 1977); M. O. S. Corp. v. John I. Haas Co., 375 F.2d 614, 617 (9th Cir. 1967); See Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957) (per curiam).
 
 
 37
 We believe that the overall structure of the Packing Agreement was such that under the circumstances of this case, an offset of some amount is proper. Libby and Shanghai had entered into a cost-plus contract. Libby was to pay to Shanghai $1.09 per case of dinners delivered by Shanghai plus Actual costs of ingredients and materials used. It was provided that at Libby's option Libby could, under specified circumstances and at its own expense, furnish ingredients and packing materials, "in which event, such costs shall be excluded in computing prices to be paid by Libby."[10] It was thus, generally, the intent of the parties that when Libby paid suppliers directly, Libby would not also pay a second time to Shanghai.
 
 
 38
 Although it can be argued that the precise circumstances specified in the contract pertaining to Libby's payment to suppliers were not met, there are other aspects of the contract which further support the conclusion that where Libby, rather than Shanghai, paid for ingredients or materials, Libby would not also have to pay Shanghai for them. Section 3.1(d) of the Packing Agreement stated that Shanghai would keep its cost data relating to its Libby business separate from its other business "to enable Libby to verify . . . actual costs and compliance with this agreement." While section 3.1(c) did provide for periodic adjustments in the base price to be paid by Libby, this was in anticipation of fluctuation ("actual increases or actual reductions") in the costs incurred by Shanghai. Were Libby to incur those costs so that Shanghai would not be liable for them, a different circumstance would arise. The district court has concluded, as a matter of law, that Libby is directly and independently liable to the suppliers, and because that issue is not properly before us, we cannot say that this determination is incorrect. Thus Libby, pursuant to our construction of the contract, is not liable to Shanghai for the costs of the ingredients and supplies that were used in producing the dinners involved here and that are now to be paid directly to the suppliers.
 
 
 39
 Libby and CNB agree that California law governs the further question whether Libby is liable to CNB as Shanghai's assignee. California law, as applicable to this case, states that "the rights of an assignee are subject to (a) All the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; . . .." Cal.Com.Code § 9318(a) (West Supp.1978). Although Libby evidently had oral notice of the assignment prior to its decision to withhold payment from Shanghai in September 1972, Libby's claims under the contract are thus still valid as against CNB because CNB must stand in the shoes of Shanghai in our analysis of Libby's contractual obligations. Consequently, the district court was correct in allowing Libby an offset against its obligation to CNB as Shanghai's assignee.
 
 
 40
 We do not believe, however, that the district court was correct in determining the amount of the offset. Apparently because the district judge believed there had been a breach of contract and total failure of consideration, he allowed Libby to offset the entire amount it would have otherwise owed CNB, including the $1.09 to be paid per case pursuant to the Packing Agreement and interest on the suppliers' claims against Libby.
 
 
 41
 In our view, there is no basis for excusing Libby from paying the $1.09 per case specified in the Packing Agreement for the dinners received by Libby. Shanghai delivered, and Libby accepted, the dinners; Shanghai was thus entitled to the benefit of its bargain. Libby was liable under the contract for $1.09 per case plus costs. If it paid the ingredient and material costs independently, it was still liable for the $1.09 per case which covered manufacturing and assorted other costs, plus profit, and which had absolutely nothing to do with the costs of supplies.
 
 
 42
 We also do not agree that Libby may offset interest on the suppliers' claims against its obligations to Shanghai. If Libby is independently and directly liable to the suppliers, then Libby ought to be liable for its own failure to recognize that obligation more promptly.
 
 
 43
 On remand, the district court should determine the number of cases of dinners that Shanghai supplied to Libby, and for which Libby has not yet paid Shanghai. Libby shall then owe its otherwise undisputed obligation minus the principal amounts owed to the suppliers,[11] but in no event less than the total representing the $1.09 per case surcharge.[12]
 
 IV
 
 44
 The Chus have asked us to reverse the district court's judgments against them as guarantors of CNB's financing agreement with Shanghai. They assert as error that the matter should have been adjudicated in the bankruptcy court, a question with which we have already dealt and have resolved against them. Because no other error has been asserted or found, the judgments against the Chus are affirmed.[13]
 
 V
 
 45
 Finally, the Pillsbury Company (Pillsbury), the only supplier to participate actively in this appeal, has asked us to exercise our discretion under 28 U.S.C. § 1912 (1976) and Fed.R.App.P. 38, and award just damages and double costs on the basis that CNB's appeal of Pillsbury's judgment against Libby is frivolous. As we have already held, CNB has no appealable interest in the suppliers' judgments against Libby. We need not decide whether this fact alone would justify such extraordinary relief, for we conclude that CNB's appeal of Pillsbury's judgment is, on the whole, frivolous. Much of what we recently said in United States ex rel. Ins. Co. of N. America v. Santa Fe Eng'rs., Inc., 567 F.2d 860 (9th Cir. 1978) (per curiam), is equally applicable to the Pillsbury appeal. "Many of the assignments of error are substantially the same. All are wholly without merit. . . . (Appellant's brief) supplies little aid to his cause, being prolix and in places unintelligible." Id. at 861.
 
 
 46
 Even assuming that CNB had standing, its substantive claim against Pillsbury that Libby was not directly liable to Pillsbury was meritless. While CNB has attacked the sufficiency of evidence regarding some of the suppliers' particular theories of liability, it has made no serious attempt to undermine the district court's basic conclusion that Libby had entered into independent contracts with the various suppliers. Indeed, based upon the record before us, CNB could not have succeeded in doing so. Further, CNB argued extensively about Uniform Commercial Code assignee priority, and that the disposition we adopt today would purportedly "emasculate accounts receivable financing." Of course, no one but CNB claimed rights as an assignee, so priority under the U.C.C. is simply irrelevant. Finally, although CNB has raised jurisdictional questions, the district court's jurisdiction over Pillsbury's counterclaim, assuming CNB had standing to raise the issue,[14] was never subject to any serious doubt.
 
 
 47
 CNB has only succeeded in delaying Libby's payment of Pillsbury's judgment, and in forcing Pillsbury to defend this appeal. "Counsel must realize that the decision to appeal should be a considered one, taking into account what the district judge has said, not a knee-jerk-reaction to every unfavorable ruling." Simon & Flynn, Inc. v. Time Inc., 513 F.2d 832, 835 (2d Cir. 1975) (per curiam). We choose to exercise our discretion and grant Pillsbury double costs and reasonable attorney's fees for the appeal, the latter to be determined by affidavit which Pillsbury will file with the clerk of this court. See Lowe v. Willacy, 239 F.2d 179, 16 Alaska 499, 180 (9th Cir. 1956) (per curiam).
 
 VI
 
 48
 In summary, we vacate the interpleader judgment and remand for its dismissal; we vacate the declaratory relief judgments in favor of Champion and Winter Garden and remand for dismissal of those parts of the declaratory judgment, and their counterclaims. We affirm CNB's judgment against the Chus and the allowance of Libby's offset, but modify the judgment to require Libby to pay the $1.09 per case, and remand for a determination of the number of cases on which that charge is owed. We reverse as to the allowance of the offset for interest. CNB's appeal from judgments in favor of the suppliers is dismissed. Finally, we grant Pillsbury double costs and reasonable attorney's fees for its defense of its judgment.
 
 
 49
 VACATED IN PART, AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. APPEAL FROM JUDGMENT IN FAVOR OF SUPPLIERS DISMISSED; DOUBLE COSTS AND REASONABLE ATTORNEY'S FEES GRANTED TO PILLSBURY.
 
 
 
 *
 Honorable Walter E. Hoffman, United States District Judge, Eastern District of Virginia, sitting by designation
 
 
 [1]
 "Blanket purchase orders" are purchase orders that Libby submitted to the suppliers covering particular quantities of product that would meet Libby's specifications for the frozen meals. The orders covered either one or more of the packers, and allowed Libby to assure consistency throughout the packaging by its various packers
 
 
 [2]
 The district judge determined that the judgments in favor of Kaiser in its independent action and the Libby action were to be such that payment of one automatically would be a discharge of the other
 
 
 [3]
 28 U.S.C. § 1335 (1976), under which this action was brought, allows so-called "minimal" diversity, State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530-31, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), as distinguished from complete diversity, and also requires only that $500 be in controversy in lieu of the usual $10,000 requirement. Federal Rule of Civil Procedure 22 also provides for interpleader proceedings, but actions under this rule must meet the usual complete diversity and $10,000 amount in controversy requirements. See C. Wright, Handbook of the Law of Federal Courts § 74, at 363 (3d ed. 1976)
 
 
 [4]
 Indeed, even had other defendants in the interpleader action made initial claims and then withdrawn them, there would still be a question whether the district court had jurisdiction. See 3A J. Moore & J. Lucas, Moore's Federal Practice P 22.08(1) (2d ed. 1978) ("If one of two parties defendant has withdrawn his claim, . . . interpleader relief is not warranted.") (footnote omitted). Here, we need not reach that issue
 
 
 [5]
 In his pretrial conference order of April 7, 1975, the district judge stated that jurisdiction of the counterclaim of Winter Garden was "under the doctrine of pendent jurisdiction only."
 
 
 [6]
 At a time prior to the adoption of the Federal Rules of Civil Procedure, we held that jurisdiction could be based on a counterclaim that independently meets the amount in controversy and diversity requirements even where the amount placed in controversy by the plaintiff did not meet the amount in controversy requirement. Roberts Mining & Milling Co. v. Schrader, 95 F.2d 522, 524 (9th Cir. 1938). The question appears otherwise unsettled, however. See generally C. Wright, Handbook of the Law of Federal Courts § 37, at 143 & n.4 (3d ed. 1976); C. Wright & A. Miller, Federal Practice & Procedure § 1415, at 82-84 (1971)
 
 
 [7]
 Aside from our policy against pendent party jurisdiction, expressed in the cases cited in the text, the Supreme Court's decision in Zahn v. Int'l Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), may foreclose such jurisdiction, at least insofar as the amount in controversy prerequisite is concerned. Zahn held that the claims of each member of a plaintiff class under Fed.R.Civ.P. 23(b)(3) must satisfy that requirement. Id. at 301, 94 S.Ct. 505. As we suggested in Snow v. Ford Motor Co., 561 F.2d 787, 791 n.6 (9th Cir. 1977), recognition of pendent party jurisdiction in a case such as the one know before us would, in effect, overrule the Zahn requirement, assuming that it applies outside the area of class actions. See generally C. Wright, Handbook of the Law of Federal Courts § 36, at 141-42 (3d ed. 1976). In light of the strong circuit policy against pendent party jurisdiction, however, we need not pursue this question
 
 
 [8]
 Our result does not change simply because the district court found that Shanghai was also directly and independently liable to the suppliers for accepting shipments and placing orders under Libby's blanket purchase orders. Shanghai and Libby were each liable to the suppliers based upon independent dealings and relationships with the suppliers. Thus, CNB has no interest in Libby's liability and vice versa
 
 
 [9]
 The "hold harmless" provision of the Packing Agreement, section 20.1, is thus inapplicable because there was no "breach of any agreement, warranty or obligation."
 
 
 [10]
 The limitations on Libby's option to provide the ingredients to Shanghai were that the costs of the ingredients would be lower, and that Libby would provide notice to Shanghai not less than 21 days prior to each two-month period of production. With respect to packaging materials, Libby was apparently expected to make a one-time choice between providing these materials at its own expense and making available to Shanghai a source from which Shanghai could acquire such materials
 
 
 [11]
 The record is insufficient for us to determine whether there is a basis upon which Libby may also include amounts owed to or paid to Winter Garden and Champion. On remand, the district court should consider this question in the first instance
 
 
 [12]
 Libby has not appealed the trial court's determination that it is not entitled to an offset with respect to its payment to one of the suppliers prior to litigation. That decision is thus not before us, and it is possible that Libby will thus suffer some double liability on that obligation
 
 
 [13]
 We are puzzled by the representation of both the Chus and CNB by the same attorney, since their interests are apparently in conflict. During the trial, the Chus introduced evidence to the effect that they could not be held to their guarantee. They do not continue to make that assertion in this appeal
 
 
 [14]
 Of course, even if the parties do not raise the question of jurisdiction, we must consider that question on our own. See generally C. Wright, Handbook of the Law of Federal Courts § 7, at 17-18 (3d ed. 1976)