Royce H. SAVAGE, Trustee in Bankruptcy of Home-Stake Production Company, Plaintiff,

v.

FIRST NATIONAL BANK AND TRUST COMPANY OF TULSA, a National Banking Association, and Chevron Oil Company of Venezuela, a Corporation, Defendants.

No. 75–C–426–C.

United States District Court, N. D. Oklahoma.

Feb. 18, 1976.

**448**

Rooney McInerney, Kenneth M. Smith, Houston & Klein, Inc., A. F. Ringold, Rosenstein, Fist & Ringold, Tulsa, Okl., for plaintiff.

Gary McSpadden, James R. Ryan, James L. Kincaid, Tulsa, Okl., for defendants.

### ORDER

COOK, District Judge.

The Court has before it for consideration a Motion to Dismiss filed by defendant Chevron Oil Company on October 24, 1975; and a Motion to Dismiss the Cross-Claim in Interpleader filed by defendant Chevron Oil Company on November 26, 1975. Based upon a thorough examination of the briefs filed in regard to said Motions and the law applicable thereto, the following determination is made.

On or about June 29, 1973, the First National Bank and Trust Company of Tulsa (hereinafter the "Bank") issued an irrevocable letter of credit authorizing defendant Chevron Oil Company of Venezuela (herein-

after "Chevron") to draw the sum of $200,-000.00 from the Bank between September 30, 1973, and October 3, 1973, assuming certain conditions existed. On September 18, 1975, plaintiff, Royce H. Savage, trustee in bankruptcy of Home-Stake Production Company, filed the above-styled action against the Bank and Chevron. The Complaint alleges that the Bank issued the letter of credit at the request of Home-Stake Production Company and that on or about June 29, 1973, Home-Stake transferred $200,000.00 in certificates of deposit to be held by the Bank as consideration of the Bank's issuance of the letter of credit. Plaintiff alleges that at the time of the transfer, there were creditors of Home-Stake in existence having claims against Home-Stake provable under § 63 of the Bankruptcy Act. Plaintiff further alleges that the transfer was effectuated without fair consideration in that the $200,000.00 obligated to Chevron via the letter of credit grossly exceeded any value or pecuniary benefit accorded Home-Stake under the agreement between the parties, and the payment of the letter of credit was in essence to be the payment of a penalty for the non-performance of Home-Stake's obligations under their agreement, and is thus null and unenforceable. Plaintiff prays that the Court will determine the intended transfer of the $200,000.00 to Chevron via the letter of credit to be null and void; and will decree the Bank to be free of any obligation to Chevron to honor the letter of credit and order the Bank to transfer to plaintiff the $200,000.00 in assets securing the letter of credit.

On September 28, 1973, an Order Staying Suit or Proceeding to Demand Payment on Letter of Credit was issued in the reorganization proceedings (No. 73–B–922) enjoining the Bank from honoring any draft drawn under the Chevron credit. The aforesaid Order remains in effect and has not been vacated.

Plaintiff asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and alleges venue is proper as to Chevron by virtue

of 28 U.S.C. § 1655. Title 28 U.S.C. § 1655 provides in pertinent part:

"In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the defendant to appear or plead by a day certain."

Pursuant to this statute, plaintiff filed a Motion for Service Without State as to defendant Chevron "on the ground that this is an action to remove an encumbrance upon the title to personal property located within this District, described as follows: "$200,-000.00 worth of First National Bank and Trust Company of Tulsa Certificates of Deposit." An Order was issued pursuant to 28 U.S.C. § 1655 on September 18, 1975, requiring Chevron to appear, plead, answer or otherwise move with respect to the Complaint.

Thereafter Chevron filed its Motion to Dismiss on the ground that the Court lacks jurisdiction. Chevron filed therewith a Disclaimer of Interest which states that Chevron disclaims any and all interest in the $200,000.00 worth of First National Bank and Trust Company of Tulsa's certificates of deposit.

■ Before § 1655 may be successfully invoked by a litigant, three essential requisites must have been fulfilled: (1) the suit must be one to enforce a legal or equitable lien upon, or claim to, the title to real or personal property, or to remove some encumbrance, lien or cloud upon the title of such property; (2) the proceeding must be in aid of some pre-existing claim, existing prior to the suit in question, and not a proceeding to create for the first time a claim to the property as the effect of the proceeding itself, (3) the property in question must have a situs within the district in which suit is brought in a federal district court. *McQuillen v. National Cash Register Co.*, 112 F.2d 877 (4th Cir. 1940), cert. denied, 311 U.S. 695, 61 S.Ct. 140, 85 L.Ed.

450, rehearing denied, 311 U.S. 729, 61 S.Ct. 316, 85 L.Ed. 474.

■ In regard to the third element, as used in § 1655, a "claim" must be upon property located within the court's jurisdiction, capable of being taken over or possessed by the court. *Kohagen v. Harwood*, 185 F.2d 276 (7 Cir., 1950), 30 A.L.R. 201 (1953). As stated in *Crichton v. Wingfield*, 258 U.S. 66, 74, 42 S.Ct. 229, 231, 66 L.Ed. 467, 471:

"Used in this connection, personal property undoubtedly refers to such as is lawfully localized within the district, and there held and enjoyed, and thus made subject to the court's jurisdiction to clear its title from clouds and liens, notwithstanding personal service within the district cannot be obtained upon those setting up adverse interests. It is the presence of property real or personal within the district which confers the limited jurisdiction . . . ."

See also *Chase v. Wetzler*, 225 U.S. 79, 32 S.Ct. 659, 56 L.Ed. 990 (1912).

There is no question but that the only personal property at issue in the case at bar located within this district is the $200,000.00 worth of certificates of deposit. This Court must therefore determine whether this is an action to "enforce any lien upon or claim to or to remove any incumbrance or lien or cloud upon the title to the $200,000.00 worth of certificates of deposit." Plaintiff does not assert that he is attempting to utilize § 1655 to enforce any lien upon or claim to property, but rather "to remove an encumbrance upon the title" to the certificates of deposit.

As stated, Chevron has filed a Disclaimer of Interest, in which Chevron disclaims any and all interest in the certificates of deposit. In *Harrison v. Prather*, 404 F.2d 267 (5th Cir. 1968) an action was brought for a partition of real estate and for damages for antitrust violations. Service of process was issued pursuant to 28 U.S.C. § 1655. Defendants filed a motion to dismiss and defendant William Prather alternatively moved to quash the return of service as to him on the grounds that he was a foreign

resident and had no lien or claim or interest in any lands located in the district, that he was not subject to the process of the court, and further that the action was wrongfully laid under § 1655. Accompanying this motion, he filed an affidavit in which he alleged that he had no claim or interest whatsoever in any land which was the subject matter of the suit. The *Harrison* Court noted that William Prather, having denied any incident of ownership in the land for which partition was sought, would be precluded from claiming any portion of the land to be divided. Likewise in the case at bar, Chevron having disclaimed any interest in the certificates of deposit, is precluded from asserting a claim as to them. The *Harrison* Court held that the *in rem* features of the suit, as they pertained to the defendant William Prather could no longer be maintained against him.

■ Title 28 U.S.C. § 1655 provides that an action to remove any incumbrance or lien or cloud upon the title to property may be brought within the district where the property is located. However, Chevron does not have any incumbrance or lien or cloud upon the title to the certificates of deposit which are the only property in issue located in this district.

Plaintiff states in his brief that if Chevron is successful in obtaining payment pursuant to the letter of credit the end result will be the indirect transfer of $200,000.00 worth of certificates of deposit securing the same from the Debtor to Chevron. "It is this indirect transfer of the Debtor's assets that the plaintiff is seeking to avoid in this litigation." Plaintiff relies on *Shuford v. Anderson*, 352 F.2d 755 (10th Cir. 1965) noting that the case indicates that a court has the power to litigate several collateral issues surrounding the right to property in a § 1655 action. This Court recognizes that prayers or demands going beyond *in rem* relief do not prevent the court from granting the relief to which a plaintiff is actually entitled. As stated by the *Shuford* Court: "The inclusion of broader claims in a complaint does not of itself negate the right to rely on § 1655 if the allegations actually set

out among others the essential foundations of a civil action to enforce a lien or claim to *real or personal property within the district* and other allegations may be deemed incidental to such action." The Court further stated:

"The inquiry must be whether the complaint states substantially a claim to or lien against the *real property situated in the district and specifically described*, or whether essentially it comprises a claim merely in personam, with the status of the real property being a mere incidental inquiry." (emphasis added).

Plaintiff also notes that § 1655 has been held applicable to suits to set aside fraudulent transfers of property brought by the trustee in the bankruptcy court. However, in *Detroit Trust Co. v. Ford Motor Co.*, 13 F.2d 942 (E.D.Mich.1926) relied upon by plaintiff, the trustee brought the suit to cancel a chattel mortgage on *property within the district* as a fraudulent transfer. If the plaintiff is seeking to adjudicate claims not involving the certificates of deposit located in this district, but rather is attempting to litigate rights and liabilities arising pursuant to the agreement between Home-Stake and Chevron, § 1655 is not applicable. As stated in 4 Collier on Bankruptcy ¶ 67.46 p. 651 (1971):

"Where, however, the action is not local, as where the trustee seeks a simple money judgment for the value of the property conveyed or for payments of money made in fraud of creditors, the general venue statute, section 1391, requiring suit to be brought in the defendant's district would seem to be clearly applicable."

Plaintiff states in his brief in support of § 1655 jurisdiction, that Chevron by purportedly disclaiming an interest in the assets securing the letter of credit is seeking to avoid the adjudication of the rights of plaintiff and Chevron with regard to these assets, when in fact . . . it fully intends to actively pursue the payment under the letter of credit which will certainly result in the indirect transfer of the $200,-000.00 in assets of Chevron. And therefore,

this Court should decide this case in the context of § 67 of the Bankruptcy Act.

If payment to Chevron by the Bank based upon Chevron's presentation of the irrevocable letter of credit were dependent upon the status of the certificates of deposit, plaintiff's argument might be of some merit. However, the letter of credit, unlike the classic surety undertaking, is a primary obligation between the issuer and the beneficiary. *Asociacion De Azucareros De Guatemala v. United States National Bank of Oregon*, 423 F.2d 638 (9th Cir. 1970). In *Bank of America National Trust & Savings Association v. Liberty National Bank & Trust Co. of Oklahoma City*, 116 F.Supp. 233 (W.D.Okl.1953), the Court noted:

"The letter of credit, when so accepted and acted upon by the person in whose favor it is issued, becomes a contract between them wholly independent of the relation between the writer of the letter of credit and its customer by whose procurement the letter was issued, except perhaps in so far as these may be incorporated in the letter. The writer of the letter of credit also has no immediate concern with the relations between the person to whom it is addressed and by whom it is accepted on the one side and the person with whom he has commercial transactions on the other side. The writer of the letter is bound strictly to the terms of his contract as expressed in its letter."

Similarly, in *Harvey Estes Const. Co. v. Dry Dock Savings Bank of New York*, 381 F.Supp. 271 (W.D.Okl.1974), the Court stated:

"A letter of credit is essentially a third party beneficiary contract. A party wishing to transact business induces a bank to issue the letter to a third party. It is a contract between the issuing bank for the benefit of the payee-beneficiary. In the ordinary letter of credit situation, at the request of one of its customers a bank issues directly to a third party a promise to pay a sum of money on being furnished with certain documents. . . . *As an element of his contractual under-*

*taking, the issuer must honor any draft or demand for payment which complies with the terms of the credit*, UCC 5–114(1), Anderson, Uniform Commercial Code, Section 5–114:7. (emphasis added).

In *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461 (2nd Cir. 1970) the Court noted that ordinarily there are three separate and distinct contracts involved in a letter of credit transaction; the contract of the bank with its customer whereby it agrees to issue the letter of credit, the letter of credit itself and the contract of sale between the buyer who is also the person who procured the bank to issue the letter of credit and the seller who accepts and acts under the letter of credit by drawing drafts thereunder.

"Except insofar as its terms are expressly incorporated therein, a bank's contract with its customer for a letter of credit in favor of a beneficiary is separate and distinct from the charter party or other contract of sale between the customer and the seller; *the letter of credit constitutes the sole contract of the bank with the seller and is completely independent of the other contracts.* (emphasis added). *Venizelos, S.A. v. Chase Manhattan Bank*, supra.

See also *Caribbean Cruise Lines, Inc., v. Swiss Credit Bank, New York Agency*, 170 F.Supp. 567 (S.D.N.Y.1959).

The foregoing cases clearly indicate that payment to Chevron by the Bank upon presentation of the letter of credit is not dependent upon the status of the certificates of deposit. As stated, the letter of credit constitutes the sole contract of the Bank with Chevron and is completely independent of the agreement between Chevron and Home-Stake. The Court notes, in this regard, that the irrevocable letter of credit furnished Chevron by the Bank pursuant to Home-Stake's direction, provides that the amount of $200,000.00 is "available by your drafts at sight" and "the amount of this credit is available at the option of Chevron Oil Company of Venezuela." No reference is made to the certificates of deposit or their status.

This Court may secure jurisdiction of a party pursuant to § 1655 only in an action to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within this District. Plaintiff asserts that in the case at bar § 1655 may be utilized to remove an incumbrance asserted by Chevron upon title to certain certificates of deposit. Chevron does not assert an incumbrance on said certificates of deposit and disclaims any interest therein. Any assertion of Chevron pursuant to a letter of credit is independent of the certificates of deposit and therefore has no direct relationship to any property within this District. It is therefore the determination of the Court that the Motion to Dismiss of Chevron Oil Company of Venezuela should be, and hereby is, sustained.

The Court also has for consideration the motion of Chevron to dismiss the cross-claim in interpleader. On October 8, 1975, defendant Bank filed its Answer and Cross-Claims in Interpleader, stating: "Chevron has asserted and is asserting one or more claims to the sum of $200,000.00 against the Bank under the Chevron Credit and the Trustee is asserting one or more claims against the Bank to the securities pledged by Home-Stake with the Bank in the amount of $200,000.00."

Section 28 U.S.C. § 1335 permits the holder of property valued at over $500.00 to bring an interpleader action if two or more adverse claimants, of diverse citizenship, are claiming or may claim to be entitled to such money or property. A prerequisite for any interpleader action is the existence of two or more claimants against the same fund. 7 Wright & Miller, Federal Practice and Procedure, § 1705, p. 303. However, in the case at bar, Chevron is or may assert a claim to $200,000.00 pursuant to a letter of credit, while the Trustee is asserting a claim against Chevron to the certificates of deposit. As indicated by the previous analysis of the contractual duties and obligations arising pursuant to a letter of credit, the claim of $200,000.00 which may be asserted by Chevron pursuant to the letter of

credit is independent of the status of the certificates of deposit. Therefore, the letter of credit constitutes an obligation which must be honored, but not necessarily out of funds provided by the securities. The Bank recognizes in its brief that "Article V of the Uniform Commercial Code makes the obligation of an issuer of a letter of credit to the beneficiary of the letter of credit the direct and independent obligation of the issuer which is separate and apart from the underlying transaction between the customer who procures the letter of credit . . . and the beneficiary."

If the Bank is considering the $200,000.00 worth of certificates of deposit the "fund" sought to be interpled, Chevron has disclaimed any interest in the "interpleader fund." As stated in 48 C.J.S. Interpleader § 24 (1947):

"A person who has no claim to the subject matter of the litigation should not be made a party, and where defendant disclaims any interest in the funds deposited in court, he has no further legal standing in the interpleader suit."

See *Helis v. Vallee*, 34 F.Supp. 467 (E.D.La. 1940), affirmed, *Gordon v. Vallee*, 119 F.2d 118 (5th Cir. 1941), cert. denied, 314 U.S. 644, 62 S.Ct. 85, 86 L.Ed. 517 (1941).

Similarly, in 3A Moore's Federal Practice ¶ 22.08[1] the authors note:

"If one of two parties defendant has withdrawn his claim, or if there is to the stakeholder's knowledge no risk of double liability or vexation, interpleader relief is not warranted."

If the Court were to interpret the "interpleader fund" to consist of funds belonging to the Bank which may be subject to payment pursuant to the letter of credit and disregard claims or disclaimers in regard to the certificates of deposit, it is apparent that the Bank does not bear the risk of double liability in regard to the "interpleader fund." It is clear from the wording of the Complaint that plaintiff is disputing Chevron's right to the $200,000.00 payment. Plaintiff does not, however, state a claim against the Bank and does not allege that the certificates of deposit are being improp-

erly held or that the Bank would be acting wrongfully if it honored the letter of credit, paid Chevron the $200,000.00, and utilized the securities of deposit to "cover" the payment. In other words, the Bank is not faced with double liability or the possibility of vexatious litigation because were it to honor the letter of credit and retain the certificates of deposit it would be acting pursuant to its original agreement with plaintiff in regard to the conditions of the issuance of the letter of credit, and plaintiff would not have a valid claim against the Bank.

As stated, the issuance of a letter of credit in effect gives rise to three separate and independent contractual relationships. In the case at bar there is the underlying agreement between Home-Stake and Chevron, which plaintiff alleges contained a void penalty provision and which agreement he alleges should be set aside as a fraudulent transfer. Secondly there is the agreement between Home-Stake and the Bank in which the Bank agreed to issue a letter of credit if Home-Stake furnished the Bank with the required securities. Thirdly, there is the duty of the Bank to honor the irrevocable letter of credit when presented by Chevron. The Complaint clearly shows that the claim asserted by plaintiff is in regard to the agreement between Home-Stake and Chevron. The Bank is not a party to that agreement and whether or not the payment of funds pursuant to the agreement may be set aside as a fraudulent transfer does not affect the other obligations between Home-Stake and the Bank, and between the Bank and Chevron.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that the Motion to Dismiss the Cross-Claim in Interpleader filed by Chevron Oil Company of Venezuela be sustained and Chevron is hereby dismissed from the Cross-Claim in Interpleader.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss of Chevron Oil Company of Venezuela should be sustained and Chevron is hereby dismissed as to this cause of action.