**LAFAYETTE CORP., LTD., Plaintiff,**

v.

**BANK OF BOSTON INTERNATIONAL SOUTH and Algemene Bank Nederland, N.V., Defendants.**

No. 89–107–Civ.

United States District Court, S.D. Florida.

Sept. 26, 1989.

Alan G. Greer, Robert Zarco, Miami, Fla., for plaintiff.

Charles W. Throckmorton, Miami, Fla., for Algemene Bank.

Raquel A. Rodriguez, Miami, Fla., for Bank of Boston.

## MEMORANDUM OPINION AND ORDER DENYING INTERPLEADER

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon:

1. Defendant's, ALGEMENE BANK NEDERLAND, N.V. (hereinafter "ABN"), Motion For Rehearing of Order Allowing Interpleader;

2. Defendant's, ABN, Motion To Dismiss Bank of Boston International South's Cross-claim (hereinafter "BBI");

3. Defendant's, ABN, Motion To Strike;

4. Plaintiff's, LAFAYETTE CORPORATION, LTD. (hereinafter "Lafayette"), Motion To Require Investment of Funds Interplead In Court Registry;

5. Defendant's, ABN, Motion for Summary Judgment;

6. Defendant's, BBI, Motion For Stay of ABN's Cross-claim Proceeding and For Enlargement of Time To Respond To Summary Judgment Motion and Interrogatories; and

7. Defendant's, ABN, Motion To Compel Discovery.

1. Lafayette's Exhibit "F" to its Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Lafayette instituted this action in the Eleventh Circuit Court in and for Dade County, Florida against BBI and ABN in connection with the issuance by BBI of a standby letter of credit (number 31070) for the account of Lafayette. Lafayette seeks to enjoin BBI from honoring the letter of credit and requests entry of a declaratory decree determining: (1) who was the proper beneficiary of the letter of credit; and (2) if ABN was the proper beneficiary, whether the letter of credit was still in effect.

The letter of credit was originally issued in 1986 in favor of Diana Export Company of Kobe, Japan (hereinafter "Diana") which sold goods to Lafayette from time to time. In 1987, at Diana's request, Lafayette asked BBI to change the beneficiary from Diana to ABN, in connection with a credit facility extended to Diana by ABN, and to change the terms of the letter of credit as to the documents required for presentment. ABN, Kobe branch, was the advising bank. BBI complied with this request to amend the letter of credit.

Prior to the scheduled expiration of the letter of credit, as amended, Lafayette requested BBI to extend the letter of credit "whose beneficiary is Diana Export Co., Kobe, Japan, at its expiry date for another period of one year." [1] On June 29, 1988, BBI telexed to ABN Bank, Kobe:

> Please advise beneficiary Diana Export Co. Kobe, Japan that letter of credit issued by us in their favor under Ref. 51070, has been amended as follows:
>
> Expiration date extended to July 15, 1989.
>
> This is operative instrument. All other terms and conditions remain unchanged.

On October 24, 1988, ABN informed BBI that contrary to the terms of the June 29, 1988 telex, ABN and not Diana, was the proper beneficiary under the letter of credit.

Lafayette claims that the term of the amended letter of credit expired by its own

terms on July 15, 1988, or in the alternative, the letter of credit was renewed again, with a new expiration date of July 15, 1989, renaming Diana as the beneficiary. ABN maintains that it remained the beneficiary of the letter of credit and demanded payment under this renewed letter of credit on or about January 11, 1989.

On January 17, 1989, a hearing was held on Lafayette's motion for preliminary injunction before the state court. The day of the hearing was coincidentally the last day on which BBI could notify ABN that it was either honoring or dishonoring ABN's alleged demand for payment under the letter of credit. At the hearing, BBI orally moved for interpleader when ABN announced that the court could not issue the injunction because ABN was presently petitioning this Court for removal.[2] Over the objections of ABN, the state court read an order of interpleader into the record directing BBI to deposit the $500,000.00 represented by the letter of credit into the registry of the Dade Circuit Court within twenty-four hours. The order was entered at approximately 2:30 p.m.. ABN did not effect removal of the action until approximately 2:44 p.m. that afternoon. The following day BBI proceeded to deposit the monies represented by the letter of credit into the registry of the Dade Circuit Court. Lafayette subsequently withdrew its request for injunctive relief.

BBI answered Lafayette's Complaint and filed a counterclaim against Lafayette and a cross-claim against ABN for interpleader relief under Federal Rule of Civil Procedure 22. After BBI served its cross-claim and counterclaim for Rule 22 interpleader, ABN filed its cross-claim against BBI for wrongful dishonor of the letter of credit. Upon holding a Status Conference in this cause, and hearing argument from counsel, this Court ordered that the Clerk of the Dade Circuit Court transfer the sum of five hundred thousand dollars ($500,000.00) deposited into Circuit Court's Registry by BBI, together with interest, if any, into this Court's Registry in an interest bearing account pending further order of this Court.[3]

## DISCUSSION

### ABN'S Motion For Rehearing of Order Allowing Interpleader

This Court has jurisdiction to reexamine the state court's order of interpleader. *Vernon Savings & Loan Assoc. v. Homes Int'l Dev. Corp.*, 676 F.Supp. 247, 249 (S.D.Fla.1988). Upon removal of a case to federal court, the federal court continues the case from where the state court left off. State court orders entered before removal only have the same force and effect in federal court as they would have had in the state court. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda County*, 415 U.S. 423, 436, 94 S.Ct. 1113, 1122, 39 L.Ed.2d 435 (1974). The power to reexamine orders is not lost by the removal of a case. *Hill v. United States Fidelity and Guar. Co.*, 428 F.2d 112, 115 (5th Cir.1970).

The state court's order of interpleader is an interlocutory order. *Miller v. Gulf Life Ins. Co.*, 148 Fla. 1, 3 So.2d 519, 520 (1941). As an interlocutory order, this Court is empowered to reexamine the state court's decision. *See Vernon Savings & Loan Assoc.*, 676 F.Supp. at 249. In addition, this Court may dissolve or modify the order of interpleader. 28 U.S.C. § 1450.

---

2. Lafayette and BBI claim that ABN received sufficient notice of the hearing on Lafayette's motion for preliminary injunction held on January 17, 1989, and that ABN's failure to notify Lafayette and BBI in advance of the hearing of its intentions to petition this Court for removal was simply a "maneuvering tactic."

A review of the record indicates that ABN was notified of the hearing on January 13, 1989. A review of the calender further indicates that between the time of the notice and hearing was an intervening weekend, as well as a legal holiday (Birthday of Martin Luther King, Jr.). Hence, ABN received notice only one business day prior to the date of the hearing. Accordingly, it is the opinion of this Court that ABN did not, as insinuated by Lafayette and BBI, delay its decision to remove this case for the purpose of tactical advantage.

3. Order dated September 14, 1989.

### ABN's Motion to Dismiss
### BBI's Cross-claim

#### Disinterested Party

█ Florida law requires the stakeholder in interpleader to be in a position of indifference, having incurred no independent liability to either of the claimants.[4] *Riverside Bank of Jacksonville v. Florida Dealers & Growers Bank,* 151 So.2d 834, 836 (Fla. 1st DCA 1963); *See also Sea Mgt. Serv., Ltd. v. Club Sea, Inc.,* 512 So.2d 1025 (Fla. 3d DCA 1987) (issuer of letter of credit is not a "disinterested" party entitled to interpleader under Fla.R.Civ.P. 1.240). It is hornbook law that every letter of credit transaction has three (3) independent contracts or undertakings. The first is the underlying agreement between the account party and the account party's customer, or, as in the case of a standby letter of credit, a party to whom the letter of credit has been given as security for the letter of credit's account party's customer's obligations to the holder of the credit. Second, is the contract between the account party and the issuer of the letter of credit. Third, is the undertaking between the issuer and the beneficiary of the letter of credit. *See American Nat'l Bank & Trust Co. of Chicago v. Hamilton Indus., Int'l,* 583 F.Supp. 164 (N.D.Ill., E.D.1984).

BBI, as the admitted issuer of the letter of credit, owes a direct contractual duty to the beneficiary of its letter of credit. BBI's duty under the letter of credit law requires it to honor any demand made under the letter of credit when the documents presented conform to the terms of the letter of credit, or if the documents do not conform or there is some other reasons why BBI elects not to honor a draft, its choice is to dishonor a demand for payment.

BBI has not established that it is not liable to both Lafayette and ABN. By allegedly neglecting to obtain ABN's consent to the amendments requested by Lafayette, BBI may be liable to ABN as a beneficiary for wrongful dishonor under the letter of credit and to Lafayette as the account party under the Application and Agreement for Commercial Letter of Credit. [hereinafter referred to as "Application"]. Thus, BBI may be liable to both parties based on two different agreements, i.e., BBI may be liable to Lafayette under the Application and BBI may also be liable to ABN under the letter of credit. Hence, the very fact that BBI owed a duty to Lafayette under the Application and may have also owed a duty to ABN under the letter of credit, makes BBI, as a matter of law, an interested party. Accordingly, BBI cannot absolve itself of liability to Lafayette, as well as, perhaps, to ABN by interpleading the so-called "disputed funds." *See Sea Management Serv., Ltd.,* 512 So.2d 1025.

While courts permit interpleader when a question arises as to who is the proper claimant of a fund, there is no authority holding that a court, rather than the issuer, can decide by means of an interpleader action whether the issuer should honor a draft or who is the beneficiary of a letter of credit. If a beneficiary had to wait for a court to decide when a draft presented under a letter of credit would be honored, it would sound the death knell for letters of credit. "The financial value of the letter of credit promise is predicated upon its decree of legal certainty. *KMW Int'l v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 16 (2nd Cir.1979). "A letter of credit is an efficacious arrangement which assures payment for completion of an obligation by placing the duty to pay on an issuer of good financial reputation," *Banco Nacional de Desarrollo v. Mellon Bank, N.A.,* 726 F.2d 87, 91 (3d Cir.1984).

#### Single Fund

█ Secondly, BBI may be liable on two different agreements, each of which gener-

---

**4.** ABN also maintains that the proper procedure for a defendant to bring an interpleader action is by cross-claim or counterclaim, that the parties against whom an interpleader is sought must be given an opportunity to answer and defend, and that attorneys' fees and costs should not be granted in an interpleader action where the claims are of the type that arise in the ordinary course of business. However, in finding that BBI was an improper party to bring an interpleader action, and that there was no "single" fund to interplead, this Court has elected to forego addressing these other arguments of ABN.

ate a fund of their own, i.e., BBI may be liable to Lafayette under the Application which is secured by Lafayette's collateral and BBI may also be liable to ABN under the letter of credit to pay ABN from BBI's own funds. The collateral which BBI held merely provided BBI with a method of being reimbursed by Lafayette for BBI's own funds from which it was obligated to pay the beneficiaries of the letter of credit. The reimbursement of such funds is purely a matter between Lafayette and BBI. Hence, ABN is not making a claim to the $500,000.00 collateral transferred into this Court's Registry. BBI's liability under the letter of credit arises regardless of any collateral BBI may have held. *See In re Marine Distr., Inc.*, 522 F.2d 791 (9th Cir. 1975).

Lafayette and BBI contend that all BBI has to establish in order to sustain an interpleader action is that BBI is subjected to double or multiple liability. However, this Court has held that more than multiple liability is required to sustain an interpleader action. *Center Partners Mgt., Ltd. v. Cache, Inc.*, 657 F.Supp. 48, 49 (S.D.Fla. 1986). The interpleader must also allege that such liability would arise as the result of several parties claiming an interest in a single fund which the interpleader seeks to deposit into the court registry. *See Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1141 (8th Cir.1976). As this Court stated in *Cache*, "[s]till, case law is insistent in holding that the risk of multiple liability that the interpleader plaintiff faces must be derived from a common particular fund." *Cache*, 657 F.Supp. at 49.

Even if this Court were to assume *arguendo* that the contract (the Application) between BBI and Lafayette which is the genesis for the collateral now deposited into this Court's Registry and the undertaking between BBI and ABN (the letter of credit) by which BBI agreed to advance its own funds arose from a common origin, this fact alone cannot, as a matter of law, form the basis for an interpleader action. "[A]n interpleader action, whether rule or statutory, will not lie where there are independent funds each with its own claim-

ants—even if the two funds arose from a common origin." *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.*, 407 F.Supp. 164, 174 (D.St. Croix, V.I.1975).

In short, Lafayette is attempting to recover the collateral deposited by BBI into this Court's Registry, while ABN is seeking to be paid from BBI's own funds under the letter of credit, independent of any collateral of Lafayette held by BBI. ABN has no claim against Lafayette's collateral deposited into this Court's Registry. *See Savage v. First Nat'l Bank and Trust Co. of Tulsa*, 413 F.Supp. 447 (D.Okla.1976) (dismissing interpleader claim of issuer of letter of credit where because of the independent nature of the claims asserted by the beneficiary and the account party, the issuer bank "was not faced with double liability or the possibility of vexatious litigation.").

*No Adverse Claims to a Single Fund*

Thirdly, if an interpleader action cannot be sustained unless there is a single fund being subjected to multiple claims neither can such an action be sustained, as a matter of law, if there are no adverse claims against a single fund interpleaded fund. *Gaines*, 539 F.2d 1136 (8th Cir.1976); *Libby, McNeill, and Libby v. City Nat'l Bank*, 592 F.2d 504 (9th Cir.1979); *Cache*, 657 F.Supp. 48. Although many of the historical requirements for strict interpleader have been eroded by Rule 22, by its terms, Rule 22 permits interpleader only if the interpleading Plaintiff "is or may be exposed to double or multiple liability". There is no such double or multiple liability here. As previously mentioned, the claims of ABN and Lafayette arise under separate contractual relationships and cannot engender the multiple liability contemplated by Rule 22. Whereas BBI's liability to ABN is based upon ABN's alleged status as a beneficiary of the letter of credit, BBI's liability to Lafayette is based upon Lafayette's status as BBI's customer.

ABN has never alleged that it has any interest in or made any claim to the monies now deposited in the Registry of this Court, nor could it, as a matter of contract

and letter of credit law, assert any such claim. Lafayette is the only one who can assert a claim to the deposited funds under the Application and, as a result, no adverse claim has been alleged against these funds. Likewise, Lafayette has no claim to BBI's own funds allegedly due ABN under the letter of credit.

Because BBI did not meet the requirements for bringing an action in interpleader, the state court's order granting interpleader was erroneous. Accordingly, the state court's order of interpleader is vacated and BBI's cross-claim and counterclaim for interpleader is dismissed. BBI's only obligation under the letter of credit was to either honor the letter of credit upon presentment of the proper documents or to dishonor the letter of credit if the demand was improper. If BBI determined the demand under the letter of credit was improper, then its remedy was to dishonor the letter of credit. Instead, BBI instituted this interpleader action in order to avoid making that determination. While interpleader may be useful as a means for BBI to avoid potential multiple litigation as well as multiple liability, "interests of party convenience and judicial economy that would be served by trial of all claims in a single proceeding 'cannot compel the otherwise inappropriate joinder of claims in interpleader.' *Gaines v. Sunray Oil Co.*, 539 F.2d at 1142." *Libby*, 592 F.2d at 509.

### ABN's Motion to Strike BBI's Affirmative Defenses

Federal Rule of Civil Procedure 12(f) authorizes this Court to strike defenses from a pleading which are insufficient as a matter of law. Those defenses which are insufficient as a matter of law should be stricken "in order to avoid unnecessary time and money in litigating invalid and spurious issues." *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F.Supp. 992, 1000 (M.D.Fla.1976).

### First Affirmative Defense

BBI's first affirmative defense asserts that ABN failed to satisfy BBI's doubts as to who was the proper beneficiary of the letter of credit or whether the letter of credit was still in effect. Because BBI may require that a draft be satisfactory to it, and that disputed issues of fact exist as to the efficacy and interpretation of the letter of credit, ABN's Motion to Strike BBI's first affirmative defense is denied.

### Second Affirmative Defense

■ BBI's second affirmative defense is that it absolved itself of its duty to pay ABN under the letter of credit by depositing the face amount of the letter of credit with the state court registry. This defense is insufficient as a matter of law because it is predicated upon the deposit of $500,-000.00 which represents funds Lafayette gave to BBI as security for Lafayette's obligation to BBI under the Application, rather than any of BBI's own funds from which BBI was obligated to pay the beneficiaries of the letter of credit. Since ABN was not a party to the Application, which is totally independent of BBI's undertaking to ABN under the letter of credit, ABN cannot, nor has ABN, ever claimed an interest in these funds. Therefore, as a matter of law, it cannot be said that BBI discharged its obligation to honor ABN's draft under the letter of credit. *See, e.g., Savage*, 413 F.Supp. 447; *Sea Mgt. Serv., Ltd.*, 512 So.2d 1025. Accordingly, ABN's Motion to Strike BBI's second affirmative defense is granted.

### Third Affirmative Defense

■ BBI's third affirmative defense is that ABN should be estopped from claiming to be the rightful beneficiary under the letter of credit because of ABN's four month delay in asserting that ABN, and not Diana, was the proper beneficiary of the letter of credit. Given that ABN purportedly received a document from BBI describing Diana as the beneficiary under the letter of credit, a question of law exists as to whether ABN was under an affirmative duty to speak such that silence or a failure to object would result in an estoppel. Accordingly, ABN's Motion to Strike BBI's third affirmative defense is denied.

## Fourth Affirmative Defense

■ BBI's fourth affirmative defense merely alleges that "[o]n information and belief, the letter of credit was fraudulently obtained by Diana by misrepresenting to the account party, Lafayette, the purpose of the letter of credit." Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be plead with particularity. Because BBI alleges fraud only in conclusory terms without stating with the requisite specificity any particulars of the misrepresentation, the fourth affirmative defense is insufficient as a matter of law. *See Viscomi v. Paine, Webber, Jackson & Curtis, Inc.*, 596 F.Supp. 1537 (S.D.Fla.1984) (dismissing complaint for failure to plead fraud with particularity). Accordingly, ABN's Motion to Strike BBI's fourth affirmative defense is granted.

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED as follows:

1. ABN's Motion for Rehearing is GRANTED.

2. The state court's order granting interpleader is VACATED.

3. ABN's Motion to Dismiss is GRANTED to the extent that BBI's cross-claim is DISMISSED without prejudice as to such pleadings as BBI deems advisable to file within 30 days from the date of this Order. BBI's counterclaim is likewise DISMISSED.

4. The Clerk of this Court shall return to BBI the funds transferred into its Registry pursuant to this Court's Order of September 14, 1989.

5. ABN's Motion to Strike is DENIED as to BBI's first and third affirmative defenses, and GRANTED as to BBI's second and fourth affirmative defenses.

6. Lafayette's Motion to Require Investment of Funds Interplead in Court Registry is MOOT.

7. ABN's Motion for Summary Judgment is HELD IN ABEYANCE.

8. BBI's Motion for Stay of ABN's Cross-claim Proceeding is MOOT.

9. BBI's Motion for Enlargement of Time to Respond to Summary Judgment Motion is MOOT.

10. BBI's Motion for Enlargement of Time to Respond to Interrogatories served on BBI by ABN on June 19, 1989, is GRANTED. BBI shall answer the interrogatories and requests for production within 30 days from the date of this Order.

11. ABN's Motion to Compel Discovery is DENIED without prejudice in order that discovery shall proceed for a period of 120 days from the date of this Order.[5]

12. BBI shall have thirty (30) days within which to file a counterclaim against Lafayette. Lafayette shall then have twenty (20) days after receipt of the same to answer or otherwise plead.

DONE AND ORDERED.

---

5. In BBI's Memorandum in Opposition to ABN's Motion to Compel Discovery, BBI stated that it "has already prepared its response to the interrogatories propounded by ABN and had every intention of serving them." However, because this Court finds there was sufficient basis for BBI's Motion for Stay of ABN's Cross-claim Proceedings, no attorneys' fees and costs incurred by ABN in making its Motion to Compel Discovery shall be assessed against BBI.