893 So.2d 1142 (2004)
CHILDERSBURG BANCORPORATION, INC.
v.
ALABAMA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT.
1030409.
Supreme Court of Alabama.
June 18, 2004.
*1143 Thomas R. Elliott, Jr., Paige Elliott-Pinson, and J. Michael Keel of London & Yancey, L.L.C., Birmingham, for appellant.
Richard F. Allen, acting atty. gen., and Scott L. Rouse, asst. atty. gen.; and Rebecca E. Patty, asst. atty. gen., Alabama Department of Environmental Management, for appellee.
HOUSTON, Justice.
Childersburg Bancorporation, Inc. ("CBI"), appeals from a summary judgment in favor of the Alabama Department of Environmental Management ("ADEM") on ADEM's claim that it is entitled to the disputed funds interpleaded in this action. We affirm.

I. Facts and Procedural History
In 1985, the First National Bank of Childersburg ("FNBC") issued an irrevocable letter of credit on behalf of Alabama Plating, Inc. ("Alabama Plating"), and in favor of ADEM. The letter of credit was intended to provide financial assurance in the event an environmental cleanup at Alabama Plating's facilities ever became necessary. CBI owned FNBC at the time the letter of credit was issued and at all relevant times until 1999, when it sold FNBC.
Alabama Plating was to provide additional financial assurance that it could handle any environmental cleanup that became necessary. However, problems arose getting Alabama Plating to provide that assurance, and ADEM ultimately required that a trust agreement be executed; Alabama Plating was the grantor, FNBC the trustee, and ADEM the beneficiary of the trust created by the agreement. The trust was funded by the entire amount pledged in the letter of credit. Following an environmental cleanup of Alabama Plating's facilities, ADEM attempted several times to access the funds held in the trust to cover a portion of the cleanup costs. However, FNBC maintained that it had neither a valid letter of credit nor a trust agreement with Alabama Plating.
In 1999, CBI sold FNBC to Marion Lowery and Peoples State Bank of Commerce ("Peoples"). After FNBC was sold, disputes arose between CBI and FNBC, prompting CBI to file a declaratory-judgment action against FNBC and Lowery. The parties successfully negotiated the dispute and entered into a settlement agreement and release (the "settlement agreement"). The settlement agreement specifically addressed the 1985 letter of credit used to fund the trust created by the trust agreement, providing, in pertinent part, as follows:
"1. The consideration for the settlement is as set forth below:
"....
"(d) CBI stipulates and agrees that after [FNBC] has been reimbursed for the $60,000.00 as set out in paragraph 1(c) above that all payments made on the Medac loan [[1]] shall be placed in an escrow *1144 account at [FNBC] until said escrow account shall reach a total of $140,000.00.
"(1) Said escrow account shall draw interest semi-annually at the prime rate of interest charged by the Federal Reserve Bank of Atlanta to banks in the state of Alabama.
"(2) Said escrow funds shall be used exclusively to pay any judgment against [FNBC] obtained by ADEM enforcing the ADEM letter of credit or to fund payment of any settlement with ADEM of [FNBC's] obligations under the ADEM letter of credit.
"(3) CBI agrees to defend [FNBC] in any action brought on behalf of ADEM to collect under said letter of credit and to pay all costs and expenses in defense of the same.
"(4) CBI shall have the full authority in its absolute discretion to defend and/or settle any claim made by ADEM under the ADEM letter of credit.
"(5) This escrow shall terminate and all funds, including interest earned, held by [FNBC] shall be paid to CBI two (2) years from the execution of this Settlement Agreement and Release so long as there is no litigation pending related to any claim made by ADEM. In the event such litigation is pending, the escrow shall terminate upon the conclusion of the litigation."
The settlement agreement was executed on August 6, 2001; therefore, the two-year window referenced in paragraph 1(d)(5) of the settlement agreement expired on August 6, 2003.
In May 2003, through its attorney, Peoples contacted ADEM, inquiring as to when ADEM would be making a claim with FNBC for payment pursuant to the trust agreement. Thereafter, Peoples confirmed the existence of the trust agreement in a letter to ADEM. ADEM then once again sought payment from FNBC pursuant to the trust agreement. After ADEM demanded payment of cleanup costs under the trust agreement, FNBC's attorney wrote CBI's attorney indicating that FNBC intended to comply with ADEM's demand. CBI's attorney responded with a letter stating that, pursuant to the settlement agreement, FNBC had no right to comply with ADEM's demand.
On June 20, 2003, Peoples filed a complaint for interpleader, naming CBI and ADEM as parties, and deposited with the court $140,000, the amount placed in an escrow account established pursuant to the settlement agreement. The complaint stated that ADEM had demanded payment pursuant to the letter of credit, which preceded the trust agreement, and that Peoples intended to comply with ADEM's demand. CBI answered the complaint and asserted a counterclaim against Peoples alleging a breach of the settlement agreement. Thereafter, Peoples moved to be dismissed from the action, but the trial court denied its motion.
ADEM then moved for a summary judgment, claiming ownership of the interpleaded funds. In response, CBI moved for a summary judgment, also claiming ownership of the interpleaded funds. The trial court granted ADEM's motion and entered a summary judgment in its favor. CBI's counterclaim against Peoples is still pending. The summary judgment in favor of ADEM was made final pursuant to Rule 54(b), Ala. R. Civ. P. CBI appeals.

II. Analysis
This Court's review of a summary judgment is de novo. Carruth v. Pittway Corp., 643 So.2d 1340, 1342 (Ala. *1145 1994). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. Once the movant shows that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. In determining the propriety of a summary judgment, this Court reviews the evidence that was before the trial court when it entered the judgment and views that evidence in a light most favorable to the nonmovant. Carruth, 643 So.2d at 1342.
Interpleader is a means by which a party may prevent being subjected to double or multiple liability. See Rule 22, Ala. R. Civ. P. The purpose of interpleader "is to bring all claimants to a fund into court in one action and determine who is entitled to the fund or to a portion of it." Ex parte Lewis, 571 So.2d 1069, 1075 (Ala.1990)(Maddox, J., dissenting)." `Historically, interpleader was available to protect a party who recognized an indebtedness, was willing to pay it, but was only interested in paying it once. The interpleader procedure affords the payor an opportunity to clothe his disbursement with the protection of a judicial determination.'" Gilbert v. Congress Life Ins. Co., 646 So.2d 592, 594 (Ala.1994)(quoting 1 Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated, 344 (2d ed.1986)).
We first note that CBI's counterclaim against Peoples for breach of the settlement agreement is still pending in the trial court. Therefore, we need not address the issue whether Peoples's actions in initiating the current litigation or in contacting ADEM amount to a breach of the settlement agreement. The only issue raised on appeal is whether the trial court properly granted ADEM's motion for a summary judgment.
Peoples instituted this interpleader action because it was concerned about the possibility of double liability. According to Peoples, if Peoples paid the disputed funds to CBI, ADEM could have brought an action under the trust agreement seeking the funds; if Peoples paid ADEM, CBI could have brought an action under the settlement agreement seeking the funds.
Peoples's complaint for interpleader demanded a judgment requiring CBI and ADEM to interplead in the action and to settle their claims to the interpleaded funds. At that point, it was the responsibility of each party to establish ownership of the interpleaded funds. CBI does not dispute ADEM's argument that ADEM was entitled to payment under the trust agreement. Its argument on appeal is based entirely on the settlement agreement.
CBI argues that the settlement agreement unambiguously required Peoples to return to it the funds held in escrow pursuant to the settlement agreement, if ADEM had not initiated litigation to recover on the letter of credit by August 6, 2003. While this may indeed be a proper interpretation of the settlement agreement, that agreement does not affect who is entitled to payment under the letter of credit and then the trust agreement. Rather, the settlement agreement controls who, as between Peoples and CBI, must pay on the letter of credit should ADEM attempt to enforce it. Therefore, CBI's argument that it is entitled to the interpleaded funds under the settlement agreement, while potentially viable against Peoples, is without merit when applied to ADEM.
ADEM submitted sufficient evidence indicating that it was entitled to payment under first the letter of credit and then the *1146 trust agreement. CBI does not dispute that fact. Therefore, CBI failed to meet its burden to present substantial evidence of the existence of a genuine issue of material fact, and the trial court properly granted ADEM's motion for a summary judgment.

III. Conclusion
Based on the foregoing, we hold that the trial court did not err in granting ADEM's motion for a summary judgment. Therefore, we affirm its judgment.
AFFIRMED.
SEE, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
LYONS and WOODALL, JJ., dissent.
LYONS, Justice (dissenting).
I respectfully dissent.
Childersburg Bancorporation, Inc. ("CBI"), formerly owned First National Bank of Childersburg ("FNBC"). During the era of CBI's ownership, FNBC issued a letter of credit on behalf of Alabama Plating, Inc., in favor of the Alabama Department of Environmental Management ("ADEM"). The letter of credit was subsequently converted to a trust agreement naming ADEM as a beneficiary. FNBC thereafter challenged the validity of the letter of credit in favor of ADEM. CBI sold FNBC to Marion Lowery and Peoples State Bank of Commerce ("Peoples"). FNBC, subsequent to the sale to Peoples, continued its ongoing dispute with ADEM. FNBC, Lowery, and CBI became involved in separate litigation. As a part of the settlement of that litigation, an escrow account was created at FNBC providing for payments into the account until the sum of $140,000 had been paid in. The proceeds of the account were to be used exclusively to pay any judgment ADEM obtained against FNBC arising out of the trust agreement. The settlement agreement provided that the escrow account would terminate and all proceeds would be paid to CBI "two (2) years from the execution of this Settlement Agreement and Release as long as there is no litigation pending related to any claim made by ADEM. In the event such litigation is pending, the escrow shall terminate upon the conclusion of the litigation."
ADEM never initiated an action against Peoples. On June 20, 2003, approximately six weeks before the two-year window provided for in the settlement agreement was to close, Peoples[2] commenced an interpleader action, paying into court the proceeds of the escrow account and joining ADEM and CBI as parties. CBI counterclaimed against Peoples, alleging a breach of the settlement agreement. CBI contends that the two-year window closed without action by ADEM and therefore that the escrowed funds should be returned to it. CBI and ADEM thus both claimed ownership of the funds made the basis of the interpleader. The trial court entered a summary judgment in favor of ADEM, awarding it the funds paid in by FNBC.
The summary judgment entered by the trial court in favor of ADEM established not only ADEM's right to recover on the trust agreement but also established ADEM's interest in the interpleaded funds paid into court from the escrow account. Whether the trial court correctly determined that ADEM was entitled to recover under the trust agreement is not before us. The question before us is whether the trial court correctly determined that ADEM was entitled to the interpleaded *1147 funds paid into court from the escrow account. The main opinion affirms the trial court's summary judgment in favor of ADEM.
Peoples justifies its interpleader action by contending that it was concerned about the possibility of double liability because, according to Peoples, if Peoples paid the funds in the escrow account to CBI, ADEM could have brought an action under the trust agreement (the successor agreement to the letter of credit); if it paid those funds to ADEM, CBI could have brought an action under the settlement agreement. Peoples erroneously contends that it is exposed to double recovery. Peoples's control over the account is based entirely on its standing as the successor to FNBC and, therefore, as holder of the escrow account. Peoples was a potential debtor of ADEM, long before it became an escrow agent. Peoples could have paid CBI the proceeds of the escrow account in accordance with the terms of the settlement agreement as CBI construes it and its potential liability to ADEM would remain no greater than it was before the settlement agreement was formulated; it simply would not have access to CBI's money in the escrow account with which to fund the payment. Peoples could have paid ADEM's claim out of its own assets without invading the escrow account and later litigated with CBI over its right to use the proceeds in the escrow account to reimburse itself for the payment to ADEM.
Peoples was exposed to single liability  it either owed the proceeds of the escrow account to CBI or it did not. Peoples had a separate obligation to ADEM. However, by filing the interpleader action, Peoples created an erroneous scenario of double liability. See 7 Charles Alan Wright, Arthur R. Miller & Mary Kane, Federal Practice and Procedure § 1705 (2001) ("A prerequisite for permitting interpleader is that two or more claimants must be `adverse' to each other. This requirement is not met when one of the claims clearly is devoid of substance, or one of the claimants is under the control of the stakeholder or has dropped the claim and the fear of multiple litigation or liability is groundless, or the claims are not asserted against the same fund, or the `stakeholder' may be liable to both claimants." (emphasis added; footnotes omitted)), citing Savage v. First Nat'l Bank & Trust Co. of Tulsa, 413 F.Supp. 447, 452 (D.C.Okla.1976), a case quite similar to the instant case. In Savage, a party in whose favor a bank had issued a letter of credit could base its claim to $200,000 only on the letter of credit, whereas the trustee in bankruptcy for the company that had given $200,000 in certificates of deposit to the bank to cause it to issue the letter of credit asserted a claim to the certificates of deposit themselves. Thus, the bank was not faced with any double liability with respect to any one particular fund and could not maintain an interpleader action.
The trial court's award of the interpleaded funds to ADEM should be reversed. ADEM should pursue its judgment against Peoples as a creditor of Peoples, not as a claimant to the funds in the escrow account. Rather than enter a judgment in its favor, as CBI insists based on its construction of the escrow agreement, I would remand this proceeding to the trial court for adversarial proceedings on the counterclaim between CBI and Peoples as to the ownership of the escrow account based solely on the terms of the settlement agreement.
NOTES
[1] Medac, Inc., owed FNBC $749,847.26, of which FNBC had "participated out" to CBI $331,567.37.
[2] The complaint in this action describes Peoples, as successor to FNBC, as the plaintiff. The settlement agreement in the former litigation is between FNBC, Lowery, and CBI.