State of NEVADA, by and through its agency COLORADO RIVER COMMISSION OF NEVADA, Plaintiff,

v.

PIONEER COMPANIES, INC., Avista Energy, Inc., American Electric Power Corporation, BP Energy Company, Constellation Power Source, Inc., Duke Energy Trading and Marketing, L.L.C., El Paso Merchant Energy, L.P., Enron Power Marketing, Inc., Idaho Power Company, Mirant America's Energy Marketing, L.P., PG & E Energy Trading—Power, L.P., Sempra Energy Trading Corp., Tucson Electric Power Company and Williams Energy Marketing and Trading Company, Defendants.

No. CV–S–02–0926–PMP–PAL.

United States District Court,
D. Nevada.

Feb. 14, 2003.

Drennan A. Clark, Nevada Attorney General's Office (CC Main), Carson City, NV, James H. Davenport, Sara S. Price, Nevada Attorney General's Office (LV), Las Vegas, NV, Gregory E. Garman, Joseph S. Kistler, Eric R. Olsen, Gordon & Silver, Ltd., Las Vegas, NV, for Colorado River Commission Of Nevada, State Of Nevada, Plaintiffs.

Jonathon Abram, Hogan & Hartson, Washington, DC, Barry L. Breslow, Michael E. Sullivan, Robison, Belaustegui, Robb, Sharp & Low, Reno, NV, Steven J. Routh, Hogan & Hartson, Washington, DC, for American Elec. Power Corp., defendant.

Gordon P. Erspamer, Seth D. Hilton, Rebecca Kruse, Morrison & Foerster, Walnut Creek, CA, George F. Ogilvie, Jeffrey A. Silvestri, McDonald Carano Wilson (LV), Las Vegas, NV, for Avista Energy, Inc., Idacorp Energy LP, defendants.

James A. Gillespie, Houston, TX, for BP Energy Co., defendant.

Patrick V. Fagan, Joan C. Wright, Allison, MacKenzie Et Al, Carson City, NV, for Constellation Power Source, Inc., defendant.

Thomas F. Kummer, Daniel Norr, Kummer Kaempfer Bonner & Renshaw, Las Vegas, NV, Donald E. Scott, Glen E. Summers, Bartlit Beck Herman, Et Al, Denver, CO, for Duke Energy Trading and Marketing, LLC, defendant.

Jennifer S. Parker, Kristina Pickering, Morris Pickering & Sanner, Las Vegas, NV, for El Paso Merchant Energy LP.

Von S. Heinz, Lewis & Roca, LLP (LV), Las Vegas, NV, Sanford Kingsley, Thomas E. McDonald, Seth W. Wiener, LeBoeuf Lamb Green MacRae, LLP (LA), San Francisco, CA, for Enron Power Marketing, Inc., defendant.

Kirby C. Gruchow, Gregory J. Walch, Santoro Driggs Walch Kearney, Et Al, Las Vegas, NV, Elizabeth Brennan, Paul R. Hejmanowksi, Lionel, Sawyer & Collins (LV), Las Vegas, NV, for Mirant America's Energy Marketing, LP, defendant.

Samuel Cooper, Michael P. Lennon, Jr., Baker Botts, LLP, Houston, TX, John F. O'Reilly, Keefer, O'Reilly & Ferrario, Las Vegas, NV, for Pioneer Companies, Inc., defendant.

Dennis L. Kennedy, Daniel R. McNutt, Lionel, Sawyer & Collins (LV), Las Vegas, NV, for Sempra Energy Trading Corp., defendant.

Vincent Nitido, Tucson, AZ, for Tucson Elec. Power Co., defendant.

Pamela S. Anderson, J.K. Hays, Hall, Estill, Harwick, Gable, Golden & Nelson, PC, Tulsa, OK, Maria Nutile, Law Office of Maria Nutile, Henderson, NV, for Williams Energy Marketing & Trading Company, Defendant.

## ORDER

PRO, Chief Judge.

Presently before this Court are nine pending motions. Plaintiff State of Nevada, by and through its Agency Colorado River Commission of Nevada ("CRCN") has filed three motions which have been fully briefed. CRCN filed Plaintiff's Motion for Order Enjoining the Institution or Prosectution [sic] of Other Proceedings (Doc. # 3) on July 9, 2002. CRCN also filed Plaintiff's Motion for Asset Management (Doc. # 4) on July 9, 2002. Finally, CRCN filed Plaintiff's Motion for Order Directing State Treasurer to Deposit with the Court Certain Cash Assets (Doc. # 5) on July 9, 2002.

Defendant Pioneer Companies, Inc. ("Pioneer") filed three separate responses to Plaintiffs' three motions (Docs.# 3, 4, 5) on August 8, 2002. Several other Defendants also filed consolidated oppositions and responses to Plaintiffs' Motions. Defendants Avista Energy, Inc. ("Avista") and Idacorp Energy, L.P. ("Idacorp")[1] filed an opposition (Doc. # 17) on August 16, 2002. Defendant Duke Energy Trading and Marketing, LLC ("Duke") filed an opposition (Doc. # 47) on September 30, 2002. Additionally, Defendant Enron Power Marketing, Inc. ("Enron") filed an opposition (Doc. # 50) on September 30, 2002. Further, American Electric Power Corporation ("American Electric") filed an opposition[2] (Doc. # 55) on September 30, 2002.

CRCN filed four reply briefs in response to the Defendants' various oppositions and responses. CRCN filed a consolidated reply to Pioneer, Avista, and Idacorp's oppo-

sitions (Doc. # 37) on August 27, 2002. CRCN also filed three separate replies to the oppositions submitted by American Electric (Doc. # 63), Duke (Doc. # 78), and Enron (Doc. # 79) on October 15, 2002.

In addition to Plaintiffs' Motions, six motions to dismiss brought by various Defendants are pending. Pioneer filed a Motion to Dismiss (Doc. # 11) on August 8, 2002. Avista and Idacorp also filed Defendants Avista Energy Inc. and Idaho Power Company's Notice of Motion and Motion to Dismiss under F.R.C.P. § 12(b)(6) (Doc. # 15) on August 16, 2002. CRCN filed Plaintiff Colorado River Commission of Nevada's Opposition to Defendant Pioneer Companies, Inc.,'s [sic] and Defendants Avista Energy Inc.'s and Idaho Power's Motions to Dismiss (Doc. # 38) on August 27, 2002. Pioneer filed a Reply (Doc. # 43) on September 23, 2002. Avista and Idacorp filed Defendants Avista Energy, Inc. and Idaho Power Company's Reply in Support of Motion to Dismiss Under F.R.C.P. 12(b)(6) (Doc. # 44) on September 23, 2002.

Duke filed Defendant Duke Energy Trading and Marketing, L.L.C.'s Motion to Dismiss Pursuant to Rules 12(b)(6) and 12(b)(1) (Doc. # 48) on September 30, 2002. In addition, Enron filed Defendant Enron Power Marketing Inc.'s Motion to Dismiss Complaint Under Fed.R.Civ.P. 12(b)(6) (Doc. # 49) on September 30, 2002. Defendant Constellation Power Source, Inc. ("Constellation") filed Motion to Dismiss and Memorandum of Points and Authorities in Support Thereof (Doc. # 53) on September 30, 2002. Finally,

---

1. The Opposition filed by Avista and Idacorp CRCN improperly named Idaho Power Company as a Defendant; the company's name is Idacorp Energy LP. (Avista Energy, Inc.'s and Idacorp Energy L.P.'s Opp'n to Pls.' (1) Mot. for Order Enjoining Institution or Prosecution of Other Proceedings; (2) Mot. for Order Directing State Treasurer to Deposit with the

Court Certain Cash Assets; (3) Mot. for Asset Management at 7.)

2. The same document number also refers to American Electric's Motion to Dismiss the Complaint Pursuant to F.R. Civ. P. § 12(b)(1) discussed below.

American Electric filed American Electric Power Corporation's Motion to Dismiss Complaint Pursuant to F.R. Civ.P. § 12(b)(1)[3] (Doc. # 55) on September 30, 2002. CRCN filed Plaintiff Colorado River Commission of Nevada's Omnibus Opposition to Defendant Enron Power Marketing, Inc., American Electric Power Corporation, Duke Energy Trading and Marketing, LLC, and Constellation Power Source, Inc.'s Respective Motions to Dismiss (Doc. # 64) on October 18, 2002. Constellation filed a Reply (Doc. # 67) on November 1, 2002. Enron filed a Reply (Doc. # 68) on November 1, 2002. American Electric filed a Reply (Doc. # 70) on November 8, 2002. Duke filed its Reply (Doc. # 71) on November 1, 2002.

Defendant Mirant Americas Energy Marketing, LP ("Mirant") filed Joinder in Power Vendors' Motions to Dismiss and Oppositions to Plaintiff's Motions for Order Enjoining Other Proceedings, for Order Directing State Treasurer to Deposit with the Court Certain Cash Assets and for Asset Management (Doc. # 65) on October 21, 2002.

## I. BACKGROUND

CRCN alleges it is an agent for the State of Nevada authorized to "hold all and administer all rights to electric power generated on the Colorado River ...." (Compl.¶ 2.1.) Pioneer, a Delaware corporation, operates a manufacturing plant in Henderson, Nevada and purchases electrical power from CRCN to run its Henderson facility. (Id. ¶¶ 2.2, 2.4.) CRCN claims that it has purchased electri-

cal power "as agent for Pioneer and for delivery to Pioneer" from Avista, American Electric, BP Energy Company, dba Amoco Energy Trading Corp., Constellation, Duke, El Paso Merchant Energy, L.P., Enron, Idacorp, Mirant, PG & E Energy Trading—Power, L.P., Sempra Energy Trading Corp., Tucson Electric Power Company, and Williams Energy Marketing and Trading Company (collectively "Vendors"). (Id. ¶ 2.5.)

CRCN contends that Pioneer filed a Petition in Bankruptcy Court for relief under Chapter 11 in July of 2001. (Compl.¶ 3.23.) CRCN further contends that part of Pioneer's Reorganization Plan, filed with the bankruptcy court, provided that Pioneer would assume certain contracts with CRCN, and Pioneer would "retain their rights to contest or dispute individual power supply contracts under the Supplemental Power Contract ...." (Id. ¶ 3.32.) CRCN avers that in June of 2002, Pioneer filed a state court action in Texas "seeking a declaration that Pioneer should not be held liable for certain transactions executed by CRCN for Pioneer's benefit."[4] (Compl.¶ 3.35.)

As a result, CRCN has brought a statutory interpleader cause of action against all of the named Defendants pursuant to 28 U.S.C. § 1335. CRCN claims that "[c]ash currently held by CRCN in the account of the Treasury of the State of Nevada for the benefit of Pioneer"; "[e]lectrical energy delivered or to be delivered to Pioneer, or to be delivered to others on Pioneer's behalf"; and "addition-

3. The same document number also refers to American Electric's Opposition to Plaintiff's Motions for Order Enjoining Other Proceedings, for Order Directing State Treasurer to Deposit with the Court Certain Cash Assets, and for Asset Management.

4. CRCN informs this Court that the court in Texas dismissed the case for lack of jurisdic-

tion. (Pl. Colorado River Comm'n of Nevada's Omnibus Opp'n to Def. Enron Power Marketing, Inc., Amer. Elec. Power Corp., Duke Energy Trading & Marketing, LLC, and Constellation Power Source, Inc.'s Respective Mots. to Dismiss [hereinafter "CRCN's Opp'n to Enron, Amer. Elec., Duke, & Constellation"] at 7.)

al property as may become available to CRCN" constitute the "assets in [CRCN's] possession which may be subject to the claims of the Vendors." (Compl.¶ 4.2.) CRCN contends that Pioneer and the Vendors "are claiming or may claim to be entitled to the money or property" held by CRCN. (*Id.* ¶ 4.3.) Further, CRCN claims that these assets are not sufficient to cover the claims and potential claims of Pioneer and the Vendors. (*Id.*)

In addition to the interpleader claim, CRCN also asserts a claim for anticipatory breach of contract against Pioneer. (Compl. ¶ 5.2.)

## II. MOTIONS TO DISMISS

### A. LEGAL STANDARD [5]

A Defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) in one of two ways. *Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations supporting subject matter jurisdiction. *Id.* On the other hand, the defendant may launch a "factual"attack, "attacking the existence of subject matter jurisdiction in fact." *Id.* (citing sources).

When considering a "facial" attack made pursuant to Rule 12(b)(1), a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989).

Unlike a "facial" attack, a "factual" attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987). The opposing party must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair*, 880 F.2d at 201. When considering a factual attack on subject matter jurisdiction, "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983) (citing *Thornhill Publ'g Co., Inc.*, 594 F.2d at 733). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Publ'g Co., Inc.*, 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)).

However, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction ... where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Augustine*, 704 F.2d at 1077). In such a case, "the jurisdictional determination should

---

[5]. Eight of the Defendants in this case have moved for dismissal, but they rely on two different theories for dismissal. Defendants Avista, Idacorp, Enron, and Constellation have moved for dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On the other hand, Defendant American Electric has moved for dismissal for lack of subject matter jurisdiction pursuant to 12(b)(1), and Defendants Pioneer and Duke contend that dismissal is appropriate under both standards. Because this Court finds that it does not have subject matter jurisdiction in the first instance, this Court will only address the standard under Federal Rule of Civil Procedure 12(b)(1).

await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine,* 704 F.2d at 1077 (citing *Thornhill,* 594 F.2d at 733–35). "In ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits." *Id.* (citing *Thornhill,* 594 F.2d at 733–34).

## B. DISCUSSION

Defendants Pioneer, Avista, Idacorp, Enron, Constellation, American Electric, Duke, and Mirant America have moved to dismiss CRCN's Complaint, contending that this Court does not have jurisdiction over CRCN's Complaint. CRCN contends that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1335.

### 1. Interpleader Jurisdiction—28 U.S.C. § 1335

"Interpleader is a procedural device used to resolve conflicting claims to money or property. It enables a person or entity in possession of a tangible res or fund of money (the 'stakeholder') to join in a single suit two or more 'claimants' asserting mutually exclusive claims to that stake." 4 James Wm. Moore et al., *Moore's Federal Practice* § 22.02[1] (3d ed.2002).

■ Generally, a federal court has jurisdiction over a claim pursuant to 28 U.S.C. § 1335, the "statutory interpleader" provision, if five requirements are met. *See generally* Wm. W. Schwarzer, et al., *Federal Civil Procedure Before Trial* §§ 10:78–10:104 (William A. Rutter et al. eds., 2000). First, a "stake" or "res" must exist that is "under the control of

the person bringing the lawsuit so as to be deliverable to the registry of the court." *General Atomic Co. v. Duke Power Co.,* 553 F.2d 53, 56 (10th Cir.1977). The "stake" must be valued at "$500 or more." 28 U.S.C. § 1335(a). Second, the plaintiff must establish that "[t]wo or more adverse claimants ... are claiming or may claim entitlement to" the stake. 28 U.S.C. § 1335(a)(1). *See also Libby, McNeill, & Libby v. City Nat'l Bank,* 592 F.2d 504, 507 (9th Cir.1978) ("Of course, a basic jurisdictional requirement of a statutory interpleader action [ ] is that there be 'adverse claimants' to a particular fund.") (citations omitted). Third, the claims must be "adverse to and independent of one another." 28 U.S.C. § 1335(b). Fourth, minimal diversity—defined as "diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens"—must exist. *State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 530, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). Finally, venue must be proper. *See* 28 U.S.C. § 1397. A statutory interpleader action "may [only] be brought in the judicial district in which one or more of the claimants reside." 28 U.S.C. § 1397. *See also Big Island Yacht Sales, Inc. v. Dowty,* 848 F.Supp. 131, 133 (D.Haw.1993) ("[A] statutory interpleader action must be brought in a district where at least one of the claimants resides.") (citing *Metropolitan Life Ins. Co. v. Chase,* 294 F.2d 500, 502 (3d Cir.1961)).

■ This Court does not have interpleader jurisdiction over the present case because CRCN has failed to establish that there are two or more claimants to the fund [6] with sufficiently adverse, indepen-

---

**6.** Whether CRCN has sufficiently pled a particular "fund" is questionable. Among other problems is the question of CRCN's control over the "fund." The Tenth Circuit has held that the "stake" or "res" must be "under the control of the person bringing the lawsuit so

as to be deliverable to the registry of the court." *General Atomic Co. v. Duke Power Co.,* 553 F.2d 53, 56 (10th Cir.1977). CRCN claims that part of the stake in the present case involves "[e]lectrical energy delivered

dent claims. *See* 28 U.S.C. § 1335(a)-(b). CRCN contends that Pioneer has "a potential claim" against CRCN.[7] (Plaintiff Colorado River Commission of Nevada's Opp'n to Defendant Pioneer Companies, Inc.,'s [sic], and Defendants Avista Energy, Inc. and Idaho Power's Motions to Dismiss at 9.) Additionally, CRCN alleges that the Vendors "also have potential claims against the interpleaded property." (*Id.* at 11.) CRCN contends that the potential claims are "sufficiently adverse" (*id.* at 13), to fulfill the jurisdictional requirement that "[t]wo or more adverse claimants ... are claiming or may claim entitlement to" the stake. 28 U.S.C. § 1335(a)(1). Pioneer, Avista, Idacorp, Enron, Constellation, American Electric, Duke, and Mirant America dispute that CRCN has met its burden with respect to showing multiple, adverse claimants.

The Ninth Circuit Court of Appeals has twice addressed the issue of whether potential claims against an interpleaded fund can confer federal jurisdiction under 28 U.S.C. § 1335, and the court came to two seemingly different conclusions. In *Libby, McNeill, & Libby v. City National Bank,* the Ninth Circuit observed that "some cases have appeared to hold or indicate that the mere potentiality of double liability on the part of the stakeholder may be sufficient to sustain an interpleader action." 592 F.2d 504, 508 (9th Cir.1978). However, the Circuit declined to take that route itself, holding instead that where "only one party ma[kes] a claim against

the fund ... that is insufficient [to confer statutory interpleader jurisdiction]." *Id.* (footnote omitted). On the other hand, in *Minnesota Mutual Life Insurance Co. v. Ensley,* the court held that "[t]he court's jurisdiction under the interpleader statute extends to potential, as well as actual, claims." 174 F.3d 977, 980 (9th Cir.1999) (citing sources).[8]

Despite the seemingly contradictory statements in the two cases, however, *Minnesota Mutual* and *Libby* are consistent. The central factor, relied on by the court in both cases, is whether the "possibility of multiple liability" of the stakeholder arises although "only a single obligation is owing." *Libby,* 592 F.2d at 509. *See also Minnesota Mutual,* 174 F.3d at 980 ("Section 1335 allows a stakeholder to file an interpleader action to protect itself against the problems posed by multiple claimants to a *single* fund.") (emphasis added).

In *Minnesota Mutual Life Insurance Co. v. Ensley,* Minnesota Mutual Life Insurance Company ("Minnesota Mutual") issued a policy insuring the life of James Ensley; the policy was originally issued with James Ensley named as the owner, and with James's wife Laura Ensley as the beneficiary. 174 F.3d 977, 979 (9th Cir. 1999). Over the course of several years, ownership and part-ownership of the policy was transferred several times—to Laura, to a Minnesota Mutual agent, and to James. *Id.* At one point, James, as owner,

---

... to Pioneer" and the "additional property as may become available to CRCN." (Compl.¶ 4.2.b.-c.) CRCN does not explain how the electrical energy already delivered to Pioneer and any additional property that may become available to CRCN in the future are sufficiently "under the control" of CRCN now "so as to be deliverable to the registry of the court." *General Atomic Co.,* 553 F.2d at 56.

**7.** Pioneer disputes this characterization of its Texas court case. Pioneer claims that Pio-

neer brought the suit "in Texas to *dis* claim the contracts and any monies associated with them." (Pioneer's Mot. to Dismiss at 13 (emphasis in original).) The court in Texas dismissed the case for lack of jurisdiction. (CRCN's Opp'n to Enron, Amer. Elec., Duke, & Constellation at 7.)

**8.** The *Minnesota Mutual* court made no mention of the earlier *Libby* decision.

changed the beneficiary designation from Laura to his brother Donald Ensley. *Id.* at 980. When James died, Donald claimed the insurance proceeds. *Id.* Minnesota Mutual, believing that Laura would also submit a claim for the proceeds, filed a statutory interpleader suit naming Donald and Laura as defendants. *Id.* Subsequently, Laura filed a claim for the proceeds. *Id.* The district court granted summary judgment in favor of Laura. *Id.*

On appeal, Donald Ensley argued that the lower court improperly found jurisdiction pursuant to 28 U.S.C. § 1335 because only one claimant had come forward at the time of Minnesota Mutual's filing the lawsuit. *Minnesota Mut. Life Ins. Co.,* 174 F.3d at 980. The Ninth Circuit found that the district court did not err in finding interpleader jurisdiction because "[t]he court's jurisdiction under the interpleader statute extends to potential, as well as actual, claims." *Id.* (citing sources). In so finding, the *Minnesota Mutual* court relied in part on the underlying rationale for 28 U.S.C. § 1335: "Section 1335 allows a stakeholder to file an interpleader action to protect itself against the problems posed by *multiple* claimants to a *single* fund." *Id.* (citing sources) (emphasis added).

Instead of upholding the lower court's interpleader jurisdiction as the Circuit did in *Minnesota Mutual,* the *Libby* Court overturned the lower court's assertion of jurisdiction. 592 F.2d at 508–09. The facts of *Libby* are more complicated than those of *Minnesota Mutual.* In *Libby,* Shanghai Instant Foods, Inc. ("Shanghai") obtained financing from City National Bank ("CNB") in exchange for giving CNB a security interest in Shanghai's accounts receivable. *Libby,* 592 F.2d at 506. Subsequently, the corporation Libby, McNeill, and Libby ("Libby"), entered a "Packing Agreement" with Shanghai "requir[ing] Shanghai to produce packaged frozen

meals for Libby according to Libby's specifications." *Libby,* 592 F.2d at 506. Shanghai, in turn, purchased ingredients and other supplies from other companies ("Suppliers") under so-called "blanket purchase orders." *Id.* Less than a year after Shanghai and Libby entered their Packing Agreement, "various companies that were supplying Shanghai in accordance with Libby blanket purchase orders complained to Libby that Shanghai had ceased to make payments to them." *Id.* Libby stopped making payments to Shanghai upon being advised that the Suppliers were going to look to Libby for payment; at this point, Libby owed a net obligation to Shanghai of over $126,000.00. *Id.* Subsequently, Shanghai filed a voluntary petition for bankruptcy. *Id.* While the bankruptcy proceedings were pending, Libby commenced a statutory interpleader suit against Shanghai in federal court, asking for declaratory relief. *Id.* at 506–07. Libby asked that the court either issue a declaratory judgment relieving Libby from claims to the Suppliers, or "relieving [Libby] from any debt to Shanghai to the extent that [Libby] was required to pay the suppliers." *Id.* at 507. The district court found jurisdiction over the case, but the Ninth Circuit reversed. *Id.* at 509.

In holding that statutory interpleader jurisdiction was lacking, the *Libby* court relied on the fact that "only one party [CNB] made a claim against the fund," and declared that one claim was "insufficient" to confer jurisdiction. *Libby,* 592 F.2d at 508. The court reasoned that:

> [I]nterpleader is designed to protect the stakeholder from such [multiple] liability only when based upon the particular fund proffered by the interpleader plaintiff . . . or, put another way, "when only a single obligation is owing." . . . While interpleader may be useful as a means of avoiding potential multiple litigation as well as multiple liability . . . interests

of party convenience and judicial economy that would be served by trial of all claims in a single proceeding "cannot compel the otherwise inappropriate joinder of claims in interpleader."

*Id.* at 509 (citations omitted).

The present case is more analogous to the situation in *Libby* than the situation in *Minnesota Mutual* for one simple reason—more than "a single obligation is owing." *Libby*, 592 F.2d at 509. CRCN's Complaint hinges on an agency theory; CRCN claims that it "purchased electrical power as agent for Pioneer and for delivery to Pioneer" from the Vendors. (Compl.¶ 2.5) As a result of the alleged agency relationship, CRCN claims that CRCN may be liable to several Vendors. Thus, like Libby—which faced potential liability to a number of Suppliers—CRCN claims that it faces potential liability to a number of companies. *See Libby*, 592 F.2d at 507. On the other hand, CRCN's situation can be distinguished from that in *Minnesota Mutual*. 174 F.3d 977. In that case, Minnesota Mutual controlled a single fund that belonged to a single person; Minnesota Mutual instituted suit in order to ascertain to whom that single fund should be paid. *Minnesota Mutual*, 174 F.3d at 980. CRCN's claim that it faces potential liability to a number of companies makes the present case wholly different from that addressed by the Ninth Circuit in *Minnesota Mutual. Id.*

CRCN's central concern in the present case is that "[t]he money or property . . . is insufficient to cover th[e] claims or potential claims." (Compl.¶ 4.3.) While this eventuality may occur, a suit in interpleader is inappropriate to resolve the underlying conflicts. Here, the alleged insufficiency of the fund does not result from several companies' vying for priority with respect to a "single obligation." *Libby*, 592 F.2d at 509. Instead, the potential insufficiency of the fund results from mul-

tiple, competing obligations CRCN voluntarily made with a number of companies. In other words, the fight here is over who gets paid first out of a limited coffer—as opposed to a fight over who gets paid at all. As stated by the United States Supreme Court in the context of a mass tort case:

> None of the legislative and academic sponsors of a modern federal interpleader device viewed their accomplishment as a "bill of peace," capable of sweeping dozens of lawsuits out of the various state and federal courts in which they were brought and into a single interpleader proceeding.

*State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 536, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). *See also* 4 James Wm. Moore et al., *Moore's Federal Practice* § 22.02[1] (3d ed. 2002) ("[I]nterpleader is not a 'bill of peace' or legal vacuum cleaner intended to suck up all related claims into a single proceeding. It is not available whenever there are multiple claimants against a particular defendant . . . .")

Even viewing CRCN's allegations in the light most favorable to CRCN, as this Court must, *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989), CRCN's allegations are insufficient to support a finding of subject matter jurisdiction. *See Thornhill Publ'g Co., Inc.*, 594 F.2d at 733. Statutory interpleader is a limited remedial device, and one that would be inappropriately used here.

### 2. Diversity Jurisdiction—28 U.S.C. § 1332

CRCN also pleads diversity as a separate basis for federal court jurisdiction. *See* 28 U.S.C. § 1332. Federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs, and" where diversity exists, *i.e.*, the matter is between "citizens of different States." 28 U.S.C. § 1332. Here, diversity does not exist, and this Court is therefore without jurisdiction.

■ A State does not have citizenship for diversity purposes. *Broadwater–Missouri Water Users' Ass'n v. Montana Power Co.*, 139 F.2d 998, 999 (9th Cir.1944) ("Absent a federal question, the district courts are not possessed of jurisdiction of suits by or against a state."). On the other hand, a State agency may or may not have citizenship for diversity purposes:

> Jurisdiction exists under the diversity statute when the controversy arises between citizens of different states, not when it arises between a citizen of one state and another state.... *The real party in interest*, rather than the names of particular parties, *is the important factor in determining whether there is diversity jurisdiction.*

*DeLong Corp. v. Oregon State Highway Comm'n*, 233 F.Supp. 7, 10 (D.Or.1964) (citations omitted) (emphasis added), *aff'd by* 343 F.2d 911, 911 (9th Cir.1965) ("We are in complete agreement with the view of the district court as expressed in its perceptive and thoroughly documented opinion ...."), *cert. denied*, 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965). *See also Moor v. Alameda County*, 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (observing that if a political subdivision of a State is "the arm or alter ego of the State," the agency is not a citizen of the State for diversity purposes) (citing sources).

In determining whether the "real party in interest" is the State, "the court must closely analyze, not only the legislation which created the [agency], but also legislation, subsequently enacted, touching on the powers and duties of said Commission." *DeLong Corp.*, 233 F.Supp. at 10.

■ CRCN is an agent of the State of Nevada, and the State of Nevada is the "real party in interest." Several observations indicate that this is the case. First, CRCN explicitly refers to itself as an agent of Nevada. (Compl. ¶ 2.1 ("Plaintiff Colorado River Commission of Nevada ... is an agency of the sovereign State of Nevada ....").) More importantly, however, Chapter 538 of the Nevada Revised Statutes repeatedly refers to CRCN as an agent that has the power to represent and act for the State of Nevada. *See, e.g.,* Nev.Rev.Stat. 538.161(2)-(7), 538.161(9). Thus, CRCN has no citizenship for the purposes of the diversity statute, and this Court does not have diversity jurisdiction over any action brought by CRCN. The Defendants' Motions to Dismiss for lack of jurisdiction will be granted.

## III. PLAINTIFF'S MOTIONS

Because this Court does not have jurisdiction over CRCN's Complaint, Plaintiff's Motion for Order Enjoining the Institution or Prosecution of Other Proceedings, Motion for Asset Management, and Motion for Order Directing State Treasurer to Deposit with the Court Certain Cash Assets, will be denied as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Pioneer Companies, Inc.'s Motion to Dismiss (Doc. # 11) is hereby GRANTED and Plaintiff's Complaint is DISMISSED in its entirety.

IT IS FURTHER ORDERED that Defendants Avista Energy, Inc. and Idaho Power Company's Notice of Motion and Motion to Dismiss Under F.R.C.P § 12(b)(6) (Doc. # 15) is hereby GRANTED. Defendants' request that this Court take judicial notice of Plaintiff's Original Petition for Declaratory Judgment, Notice of Objections to Debtor's Plan of Reorga-

nization, and Minutes of December 11, 2001 Colorado River Commission meeting (Doc. # 15) is also GRANTED.

IT IS FURTHER ORDERED that Defendant Duke Energy Trading and Marketing, L.L.C.'s Motion to Dismiss Pursuant to Rules 12(b)(6) and 12(b)(1) (Doc. # 48) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant Enron Power Marketing Inc.'s Motion to Dismiss Complaint Under Fed. R.Civ.P. 12(b)(6) (Doc. # 49) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant Constellation Power Source's Motion to Dismiss and Memorandum of Points and Authorities in Support Thereof (Doc. # 53) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant American Electric Power Corporation's Motion to Dismiss Complaint Pursuant to F.R. Civ.P. 12(b)(1) (Doc. # 55) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Order Enjoining the Institution or Prosectution [sic] of Other Proceedings (Doc. # 3) is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff's Motion for Asset Management (Doc. # 4) is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff's Motion for Order Directing State Treasurer to Deposit with the Court Certain Cash Assets (Doc. # 5) is DENIED as moot.